# Commonwealth *v.* Coyle, Appellant.
# Commonwealth, Appellant, *v.* Coyle.

*Criminal law—Cruelty to pauper—Directors of the poor.*

Directors or overseers of the poor may be indicted at common law for willfully neglecting or refusing to discharge their duties to paupers under their charge.

An indictment against directors of the poor for permitting a pauper of tender years to be so grossly maltreated as to result in his death will be sustained where the evidence shows that defendants were informed that the person to whom they bound the child was of bad character, that his house was an unsafe place for so young a boy, and that his parsimony and cruelty in the treatment of poor children committed to his care were well known in the neighborhood in which he lived.

In such a case it is the duty of the directors of the poor after a child is bound to service to see that the covenants of the master are substantially complied with, and, if these are willfully and persistently violated to the injury of the child's health, to institute necessary proceedings to set aside the indenture.

*Evidence of acts of cruelty—Notice to directors.*

Where the directors of the poor indenture a pauper of tender years to a person whom they know to be a cruel and dangerous master, and the child dies from maltreatment and neglect, it is competent for the Commonwealth, on the trial of an indictment against the directors, to introduce evidence descriptive of the results of their misconduct without proving personal notice to them of each specific act of cruelty which contributed to the death of the child.

*Public officers—Misdemeanor in office—Expiration of term.*

A public officer may be prosecuted and punished for misdemeanor in office after his term has expired.

*Poor laws—Indenture of pauper to non-resident.*

Officials charged with the care of the poor in one district may lawfully apprentice an infant pauper to a fit person in a neighboring district,

Argued April 24, 1893.   Appeal, No. 119, July T., 1893, by James Coyle, one of the defendants, from judgment of Q. S. Cumberland Co., on verdict for Com'lth.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.   Affirmed.

Indictment for permitting cruelty to pauper.

At the trial, before˙ SADLER, P. J., defendants moved the court to quash the entire bill of indictment on the ground that it alleged no offence indictable at common law or under any statute.   The court denied the motion.   Bill sealed. [7, 8]

The substance of the third count of the bill was that defendants had committed a misdemeanor in office by indenturing the pauper to a person residing without the limits of the county of Cumberland.   On motion the court quashed this count. The Commonwealth excepted, and a bill was sealed.   [1 a]

It appeared from the evidence that defendants, James Coyle, Michael Seavers, and John H. Rhoads, directors of the poor of Cumberland county, indentured Joseph N. Diller, a pauper seven years of age, to John W. Lafferty, of Adams county, and that at the time of the indenture Lafferty was known to be a man of cruel and dangerous character, and that he and his family had ill treated another child intrusted to their care.

The Commonwealth offered to prove by Abraham Fink that when Mr. Boyer brought the child over he said he had been sent over by the directors of the poor, as their steward, their servant or agent, with the child, on six weeks' trial; that he asked the witness what kind of people the Laffertys were, and witness told him he didn't know much about them; and witness said he had heard of their having a boy and ill treating him, and running a fork in him; and then Mr. Underwood, who was the agent of the directors of the poor, said that he had seen this boy the Laffertys had in whom they had run a fork, and he would rather follow a child of his to its grave than put it to Lafferty's; he said he had lived near Laffertys and knew

all about them and their ill treatment of the boy, and he told Mr. Boyer this.   To be followed up by further proof.

Objected to on the ground that it does not propose to show that it was communicated to the defendants.   Objection overruled, offer admitted, exception. [2]

" Q. You never complained to anybody, to the directors of the poor ?   A. No, sir."

Defendants were notified by letter on Sept. 3, 1891, that the boy was being ill treated ; they sent appellant, as a committee, to see the boy Sept. 5, 1891, but the boy was allowed to remain.

Reuben M. Underwood, witness for the Commonwealth, testified as follows :  " Q. Go on and state your knowledge of this case.   A. The day the Diller boy was brought over to Lafferty's, I was going to the station with some grain, and there was a little boy in Lafferty's yard, and knowing they had no little boy I took particular notice of him.   I thought perhaps it was some of their relations ; and I unloaded my grain and stopped at the store to get some groceries, and while he was waiting on me, the steward, Mr. Boyer, came in there."

Defendants objected to the testimony of the conversation that occurred between Mr. Fink and the witness.   Objection overruled, exceptions. [3]

" A. He came in there and shook hands with them ; they used to be neighbors.   Fink and Boyer were neighbors when they lived in Cumberland ; they told me so.   And he said he had brought some children over to put at Lafferty's, a couple of children ; and Fink said, ' It is a pity you didn't get them a better place.'   And we talked on a little, him and me, and I told him I thought it was my duty to state to him that they had almost killed a child before, and I couldn't stand here and let other children be put there for them to kill."

Mrs. Elizabeth Smyers, Commonwealth's witness, was asked in her examination in chief whether Mrs. Lafferty told her that they tied Joe's hands behind his back and pushed him into the wash house ?

Objected to unless it is proposed to be followed by proof that this was communicated to defendants.   Objection overruled, offer admitted, exception. [4]

The witness answered in the affirmative.

Testimony, by a number of witnesses, of other acts of cruelty

prior to Sept. 5, 1891, was admitted under objection and excep-
tion, and grouped together in the first assignment of error. [2]

Commonwealth's counsel also offered to show by Mrs. Smy-
ers the ill treatment of the boy when he was dying.  I offer to
prove that when the witness got to the house, that Mrs. Laf-
ferty said: "'Joe's going to die.'  And I said, 'I guess not,'
and she repeated it; 'Yes, Joe is going to die.'"  That they
had not put him to bed; that Liz got some old rags and put
them under him, and they laid him on the bench in the out
kitchen or wash house, and the doctor said when he came that
they should put him to bed and get some good blankets on him
and warm him up; that they didn't put him to bed, but made
him a bed on a bench; that the doctor said they should take
off his clothes; that they took off his pants and his drawers
were wet, and the witness wanted to take them off, as the doc-
tor had told her, but Mrs. Lafferty would not allow this, but
said that she and John would do that if it was necessary; that
the witness told her that they had a good lounge, and could
make him a good bit easier on that; that they set two small
benches together and made him a bed on that, and on that he
died there, and never got to bed or on the lounge.  This is of-
fered to show ill treatment, and to follow it up to the time the
boy was dying.

Offer objected to by defendants' counsel, on the ground that
it does not show any ill treatment or abuse on the part of the
Laffertys, and that the same was not communicated to the di-
rectors of the poor, nor does it show any guilt or tend to estab-
lish any guilt on part of defendants.  Objection overruled, offer
admitted, exception. [5]

Andrew Kerr having testified that he knew this little boy,
Joe Diller, and knew his size, the Commonwealth proposed to
ask the witness how Joe Diller compared in size with this boy,
James Mullin, so that we may have a more vivid idea of the
size of little Joe Diller.  Objected to by defendants' counsel as
irrelevant and highly improper.  The witness described the size
and so forth of Joe Diller, and the jury are competent to judge
of the size from such description, which is the only competent
evidence of those facts; and the offer is for the purpose of cre-
ating a sensation, and the tendency is to mislead and confuse
the jury in respect to the real issue trying.  Offer admitted
and exception. [6]

Defendants' points were among others as follows :

" 1. If the apprenticing of the boy was done by the defendants pursuant to a statutory duty, and without any intention or reasonable expectation that harm would thereby result to the apprentice, then there is no crime that can be imputed to these defendants,—the intent necessary to constitute the crime is wholly wanting. *Answer :* Affirmed, unless you find that they negligently indentured him to a person of improper character." [9]

" 6. The court is requested to withdraw from the jury all evidence tending to show maltreatment of Joseph N. Diller after September 5, 1891, which was not communicated to the defendants, and, as no information was given them of any acts occurring after September 5, 1891, all evidence of such acts should be disregarded by the jury. *Answer :* Unless you find, as contended for by the Commonwealth, that, on or before the 5th day of September, 1891, the directors or their committee were given such information of the maltreatment of the boy as made it their manifest duty to take steps to have the boy taken away from Lafferty, or to compel him to do his duty, and they disregarded it, you will not consider testimony offered by the Commonwealth to show the maltreatment of Joseph N. Diller after that date, and it will be regarded by you as withdrawn from your consideration. But should you find that the committee received the information, as testified to by Group, Smyers, Mrs. Smyers, Strewig, and was told of others, who could acquaint him with specific acts of ill treatment of the boy, but failed to call upon them, the prayer is refused." [10]

" 7. The court is requested to withdraw from the jury all the evidence of Rachel Baker, Amos Kreiner, Mrs. Jessie Smyers, tending to show maltreatment of Joseph N. Diller, which was not communicated to the defendants, and that as no information was given them of any such acts prior to or after September 5, 1891, all evidence of such acts should be disregarded by the jury. *Answer :* This prayer is refused. Amos Kreiner's testimony was in reference to an alleged occurrence in August, that of Mrs. Baker in hay-making, and Mrs. Smyers testified that she offered to communicate with Mr. Coyle on the afternoon of September 5th, and that he promised to return and meet her, but failed to do so ; and if this should be found to be

true, his failure to get information she possessed was his fault." [11]

Verdict of guilty.   The sentence was as follows:

June 14, 1892.   Defendant James Coyle sentenced to pay a fine of $100 and three fourths of the cost of prosecution.   Defendants Michael Seavers and John H. Rhoads, sentence suspended upon the condition that they pay one fourth of the costs of prosecution. [13]

*Errors assigned* by James Coyle were (1–6) rulings on evidence, quoting bills of exceptions and evidence; (7, 8) refusal to quash indictment; (9–11) instructions, quoting them; (13) sentence.

*Error assigned* by Commonwealth was (1 *a*) quashing third count of indictment.

*John Hays* and *J. W. Wetzel, W. A. Kramer* and *M. C. Herman*, with them, for James Coyle, cited: Act of March 31, 1860, sec. 183, P. L. 426, Purd. 470; Mevay v. Edmiston, 1 Rawle, 457; Hellings v. Com., 5 Rawle, 64; Rees v. Emerick, 6 S. & R. 286; Com. v. Evans, 13 S. & R. 426; Act of Feb. 12, 1829, P. L. of 1828 and 1829, p. 42; Com. v. Thompson, 126 Pa. 614; Penna. R. R. Co.'s Ap., 128 Pa. 509; Act of March 31, 1860, § 64, P. L. 445, Purd. 490, Com. v. Harris, 1 Leg. Gaz. R. 455.

*W. J. Shearer* and *Fillmore Maust, J. E. Barnitz*, district attorney, with them, for Commonwealth.

### COM. V. COYLE, APPELLANT.

OPINION BY MR. JUSTICE McCOLLUM, February 26, 1894.

James Coyle, appellant, Michael Seavers and John H. Rhoads were jointly indicted and tried for neglect of their duty as directors of the poor and of the house of employment for Cumberland county.   A verdict of guilty was rendered by the jury, sentence was suspended as to Seavers and Rhoads on their payment of one fourth of the costs, and Coyle was sentenced to pay a fine of one hundred dollars and three fourths of the costs. The pith of the complaint against them was that they neglected

to discharge a duty which in their official capacity they owed to Joseph N. Diller, a poor and infirm child aged seven years, who was a legal charge upon the county of Cumberland, and that in consequence of their neglect he died. In the first count of the indictment they were charged with having knowingly permitted him to be grossly maltreated by the person to whom he was apprenticed by them, and in the second count thereof, with having, while he was in their charge and under their care, willfully neglected to provide him with reasonable and necessary food and clothing, and otherwise abused and illtreated him. The evidence produced on the trial was clearly sufficient to warrant the conclusion that the death of the child was hastened by, if it was not solely attributable to, the treatment he received while in the custody of Lafferty, to whom he was bound by them on the 4th of June, 1891, for a term of fourteen years. It was also sufficient to sustain a finding that before they committed the child to the care of Lafferty they knew or ought to have known that the latter was not a proper person to have control of the former. Boyer, who was their representative in the arrangement under which the child was left at Lafferty's six weeks before he was indentured, was advised by persons in the neighborhood that it was an unsafe place for a boy of his years. The testimony of Underwood and Fink on this point showed that they gave him information in respect to the character of Lafferty and his family, and their harsh treatment of a child in their care, which would have prevented any prudent person from committing a boy of tender years to their custody. A parent so informed would not have surrendered his or her child to their possession and control without an investigation which demonstrated that the charges against them were groundless. The care which a parent ought to exercise under such circumstances devolved upon the directors when young Diller became a charge on their district, and there is reason to believe that if they had faithfully performed the duty thus cast upon them, he would not have been subjected to the cruel treatment which appears to have been responsible, in some degree at least, for his untimely death. But it is manifest from the testimony that they did not exercise the care enjoined by the law, and that they were negligent in binding him to Lafferty and in their failure to institute proceedings to cancel the indenture.

We need not repeat or discuss the testimony descriptive of the neglect and cruelty to which the child was subjected. It is sufficient to say of it that in our opinion it fully sustained the charges made in the first and second counts of the indictment.

It is contended that the indictment does not charge an offence known to the criminal law; that the directors are not indictable under sec. 42 of the act of June 13, 1836, P. L. 550, because the office of overseer of the poor is abolished in Cumberland county, and that they cannot be prosecuted under section 90 of the act of March 31, 1860, P. L. 405, because it appears from the indictment and the testimony that the maltreatment complained of was after they left the child with Lafferty, and was inflicted by him and his family. The counsel for the Commonwealth agree with the counsel for the defendants that this case is not governed by the statutes referred to, but the former maintain and the latter deny that the matters charged in the indictment constitute a common law misdemeanor.

We think the contention of the defendants that the common law does not hold them criminally liable for a willful neglect or refusal to discharge their duties as directors is unsound. In Am. & Eng. Ency. of Law, vol. 19, p. 504, the rule on this subject is stated thus: "The neglect or failure of a public officer to perform any duty which by law he is required to perform is an indictable offence even though no damage was caused by the default, and a mistake as to his powers or with relation to the facts of the case is no protection." In Russell on Crimes, vol. 1, p. 80, it is said that "it is an indictable offence in the nature of a misdemeanor to refuse or neglect to provide sufficient food or other necessaries for any infant of tender years unable to provide for and take care of itself (whether such infant be child, apprentice or servant) whom the party is obliged by duty or contract to provide for, so as thereby to injure its health." In Archbold's Criminal Pleading and Practice, vol. 2, p. 1365, it is said that "an overseer of the poor is indictable for misfeasance in office, as if he relieves the poor where there is no necessity for it: Tawney's Case, 16 Vin. Abr. 415; or if he misuse the poor, as by keeping and lodging several poor persons in a filthy and unwholesome room with the windows not in a sufficient state of repair to protect them against the sever-

ity of the weather: Rex v. Wetherill et al., Cald. 436; or by exacting labor from them when they are not able to work: Rex v. Windship et al., Cald. 76. And if overseers conspire to marry a poor woman big with child for the .purpose of throwing the expense of maintaining her and the issue from themselves upon another parish or township, they may be indicted: Rex v. Compton, Cald. 246. And for most breaches of their duty overseers may be punished by indictment or information." In Pennsylvania, overseers of the poor have been indicted, convicted and sentenced for a misdemeanor in office in selling the keeping of paupers by public vendue or outcry to the lowest bidder: 9 Pa. 48–9.

It is a wise policy which exacts from a public officer, intrusted with the care of the poor persons in his district, faithful and humane administration of the laws enacted for their relief. In the proper enforcement of such laws they have considerate and kind treatment and a comfortable maintenance. Their inability to provide for themselves is not a crime nor any excuse for neglecting or maltreating them. As charges upon the district they are entitled to have from it wholesome food and comfortable clothing, and a sufficiency of both. If they are of tender years, or from any cause unable to work, it is an act of cruelty to exact from them the performance of tasks which are beyond their strength and injurious to their health. It is culpable negligence in an officer representing the district charged with their support to bind an infant pauper to service with a person whose parsimony and cruelty in the treatment of poor children committed to his care were well known in the neighborhood in which he lived. Inquiry in respect to the character of the master is a duty, and, where he resides in a county outside of the district in which the pauper is settled and is personally a stranger to the officer, the non-observance of it is a misdemeanor. It seems to us also that it is his duty after the child is bound to service to see that the covenants of the master are substantially complied with, and, if these are willfully and persistently violated to the injury of the child's health, to institute the necessary proceedings to set aside the indenture.

In the present case the directors, with knowledge of Lafferty's character, bound young Diller to him, and, with knowledge of

the abuse the child was receiving from his master, refused to take any measures to rescue him from the cruelty to which he was subjected by their own negligent act. If, as they contend, their conduct is not condemned in terms by any of our statutes in relation to the care of the poor, it is gratifying to know, as we have seen, that the common law holds them responsible for it as a misdemeanor in office.

The several specifications of error which complain of the admission of evidence of deprivation and cruelty after the 5th of September, 1891, and of the denial by the court of the defendant's motion to strike out such evidence, are not sustained. The evidence referred to showed a continuance of the ill usage they approved, by their refusal to take any measures to prevent the master's persistence in it, and was descriptive of the consequences of their negligence. With their knowledge of his character and of his maltreatment of the helpless boy they committed to his care, they should have anticipated what followed. Having declined, when requested, to intervene in behalf of the suffering child, and thus impliedly sanctioned the master's abuse of him, they had no reason to expect that he would receive better treatment thereafter. In plain violation of their duty to the child and the district they represented, they knowingly bound him to service with a cruel master, and continued him in it when they knew or ought to have known that his health was seriously impaired and his life endangered by it. It was this breach of duty which constituted their offence, and it was competent for the Commonwealth to introduce evidence descriptive of its results without proving personal notice to them of each specific act of cruelty which contributed to the distress of their victim.

We are not able to discover in the remaining specifications anything which calls for the reversal of the judgment. The contention that the appellant cannot be prosecuted and punished for misdemeanor in office because his term has expired, is not supported by reason or authority, and certainly he ought not to complain, that, while he was liable for all the costs, he was required to pay only three fourths of them.

The specifications of error are overruled and the judgment is affirmed.

COM., APPELLANT, v. COYLE.

OPINION BY MR. JUSTICE McCOLLUM, February 26, 1894:

This is an appeal by the Commonwealth from an order of the Court of Quarter Sessions of Cumberland county quashing the third count of an indictment against James Coyle and others for neglect and violation of their duty as directors of the poor and of the house of employment in said county. It was the only count in the indictment in which the offence was laid as contra formam statuti. It was obviously framed on the theory that in binding an infant pauper settled in their district to a person residing in an adjoining county the defendants committed a misdemeanor in office. If the contention based on this theory is sound it was error to quash the count. But the learned counsel for the Commonwealth have not referred us to any statute which requires in express terms or by fair implication that the binding-out shall be to a resident of the district of the pauper's settlement, or to a decision of any court which sustains their claim that the officials charged with the care of the poor in one district cannot lawfully apprentice an infant pauper to a fit person in a neighboring district. Nor has our own research brought to our notice any such statute or decision. It seems to us that it is at least questionable whether a restriction upon the power of the officials in accordance with the Commonwealth's contention would be for the best interest of the persons most likely to be affected by it. It might often happen that such a restriction would deny to a poor child a good home with a kind master, and thus materially interfere with his physical, intellectual and moral advancement. We cannot say, therefore, that if the defendants had bound young Diller to a suitable person in Adams county they would have exceeded their lawful powers, or violated any duty they owed to the lad or to the district they represented. If the directors of the poor knowingly or negligently bind an infant pauper to a cruel master in their own district or elsewhere they violate their plain duty to the child and ought to be punished for it, but their selection of a good master and comfortable home for the child in an adjoining district is not in disregard of any duty the law enjoins upon them. While the count in question included some matters fairly covered by the preceding counts, it was grounded upon a denial of the

power of the defendants to bind a poor child who was a charge upon their district to any resident of the adjoining county, and for that reason we think it was properly quashed.

The specifications of error are overruled and the judgment is affirmed.