## Commonwealth v. Colwell.

*Criminal law—Master and servant—Neglect of minor employee—Act of March 31, 1860.*

1. Where a farmer employs a boy, nineteen years of age, under a contract with his mother to pay weekly wages and furnish the boy with board, lodging and clothing, and the employer fails to supply the boy, who was of weak intellect, with board and necessaries, he may be indicted under section 90 of the Act of March 31, 1860, P. L. 382, 405.

2. Such an employer is a person, within the meaning of the act, possessing the "legal care and control" of the minor, and "legally liable to provide" for him.

3. The fact that such a minor is nineteen years old is immaterial if it appears that he is weak in intellect.

*Criminal law—Defective indictment—Amendment.*

4. Where no objection is taken to an indictment at or before the trial, and objection is only made to the admission of certain evidence, the indictment may, after a verdict of guilty, be amended so as to conform to the evidence.

Rule for new trial. Q. S. Susquehanna Co., Aug. Sess., 1922, No. 18.

*John Ferguson*, District Attorney, for plaintiff.

*W. A. Skinner* and *F. A. & E. L. Davies*, for defendant.

SMITH, P. J., Nov. 14, 1922.—The defendant was tried upon an indictment containing three counts.

First count, aggravated assault upon the person of James Herliky, a minor.

Second count, wilfully and without lawful excuse refusing and neglecting to provide said minor as one of whom he had legal charge and control and liable to provide such with necessary food, clothes and lodging.

Third count, unlawfully and maliciously assaulting said minor, whereby the latter's health was permanently injured.

The first count being drawn under the 98th section of the Penal Code of 1860, and the other two under the 90th section of the same Code. The latter provides against the two said offences when committed by "any master, mistress or any person having the legal care and control of any infant."

Under the reasons for a new trial assigned, it is important to first determine whether, under the evidence at the trial, the defendant comes within the meaning of the language of this section of "any person" possessing such "legal care and control" of James Herliky and "legally liable to provide" for him as stated in the act.

It appears from the testimony of Florence Ecker, mother of James Herliky, the infant alleged as having been maltreated by the defendant at the time of the acts and commissions complained of, was an employee of the defendant, working upon his farm under a contract for wages made verbally by the mother with the defendant, to wit, the defendant to pay cash wages $12 per month and furnish the boy board and lodging, and out of the $12 per month to purchase him necessary clothing and the balance, if any, to be paid to the mother, who says she received $12, with which the testimony of the defendant himself is at variance only as to the amount of cash wages, which he negatives as being $12 per month, but does not state just what they were.

It is cause of congratulation that occasions for prosecuting under this section 90 rarely arise. In consequence, however, there is a like absence of judicial interpretation and application of its provisions. If a "legal care and control" of James Herliky, the infant here, by the defendant, Marcus Colwell, is deemed to have existed during the period of the alleged offences charged in the indictment, it must have been because of their relations as master and

servant, because of the contractual relations created by the contract of hiring by the defendant of said infant, placing upon the former the responsibility of furnishing the latter with "necessary food, clothing and lodging," as supported by the testimony.

The research by attorneys on both sides, as well as our own failing to find any direct decisions in Pennsylvania, unless it be the quotation by McCollum, J., and approved by him as law in Com. v. Coyle, 160 Pa. 36, 42; from 1 Russell on Crimes, 80: "It is an indictable offence in the nature of a misdemeanor to refuse or neglect to provide sufficient food or other necessaries for any infant of tender years unable to provide for and take care of itself (whether such infant be child, apprentice or servant), whom the party is obliged by duty or contract to provide for so as to injure its health." This language, it will be observed, includes "servants" as subjects of the protection of this legal principle.

A careful reading of the various citations in note in Russell on Crimes, quoted above, throws some light on the question of "legal care and control," and the meaning of the language thus used in the Pennsylvania statute, as also of the other language, "being legally liable to provide for such . . . infant."

The learned attorney for the defendant at bar ably contends that the Pennsylvania statute includes as those of such "legal care and control" and "legally liable to provide" for an infant only those so held at common law, such as parent, guardian, master of apprentice and the like, and necessarily excludes an employer of the nature of the defendant at bar.

The English case of Regina v. Marriott, 8 Car. & P. 425, 34 Eng. Com. L. Rep. 461, was a prosecution under the Statute of 16 and 17 Vic., ch. 6, § 9, for the protection of lunatics, providing for the prosecution of a "person having care and charge of a lunatic," the defendant being charged in an indictment for the murder of an insane woman by confining her, not "providing her with meat, drink, clothing," etc., and held that "if the jury was satisfied that he acted wilfully, so gross he must have contemplated her death, then he was guilty;" verdict, guilty of manslaughter.

Patterson, J., in his charge, said: "The cases which have happened of this description have been generally cases of children and servants where the duty has been apparent. This is not such a case, but it will be for you to say whether, from the way in which the prisoner treated her, he had not by way of contract in some way or other taken upon him the performance of that duty which she, from age and infirmity, was incapable of doing." Then, referring to the evidence of contract, he continued: "This is the evidence on which you are called on to infer that the prisoner undertook to provide the deceased with necessaries, and though he broke the contract, he might not be indicted during her life, yet if by his negligence her death was occasioned, then he became criminally responsible."

Again, in commenting upon the provisions of the statute, the court said: "It is very clear that the legislature never intended to interfere with the care and charge, which is purely of a domestic nature and arises from the relation of husband and wife or other similar relations. It was not intended to add to the common law obligation of the master or head of a family, who, whether husband, guardian, relative or otherwise, is liable to be punished if he ill-uses any person under his control; I do not think the words 'any person' were intended to apply to persons having a control of a purely domestic character."

By analogy of reasoning from the above, and it appears to us necessarily, the Pennsylvania statute must be subject to the same rule of interpretation, 3 D. & C.

and instead of including as those subject to prosecution under its provisions, instead of including those occupying domestic relations, such as parent and children, husband and wife, etc., actually excluding them by implication, resting upon their responsibilities and criminal liabilities under the well known rules of the common law—sufficiently effective to protect the unfortunates provided for—we must decide that the words "any person," so used in our statute, mean "any person" other than those otherwise at common law liable criminally for the same acts or omissions enumerated therein. This conclusion is emphasized by the fact that none of these so-termed "domestic relations" are enumerated in the statutory classifications, for naturally they would be the first thought of and designated were they in the mind of the legislature passing the law. We are, therefore, of the opinion that the defendant is a proper person so designated as "any person;" and, further, that by the contract of hiring the infant, James Herliky, he became "legally liable to provide him necessary food, clothing and lodging," within the terms of the statute, during the period of the employment in which the alleged injured party, Herliky, was an employee or a "servant" of the defendant, coming within the definition of that term by all the dictionaries and adopted by legal decisions. See, as collated in Words and Phrases, "Servant." If it be claimed, and probably with some show of reason, that the case of People *v.* Pierson (N. Y.), 68 N. E. Repr. 243, is contrary to our conclusions, we see no reason to change the opinion we have thus expressed.

The contention that the infant, James Herliky, is not of "tender years, unable to provide for and take care of himself," the evidence gives his age nineteen years, calls for our further consideration from the fact that while the language quoted does not appear in the statute, still the defendant's attorney urges that it is apparent from the quotation above from Russell on Crimes, in 160 Pa. 42, *ante.*

While a literal interpretation of our statute would apply to any infant, regardless of such conditions, we will not decide on that point as it is unnecessary under the facts of this case.

In Meyer *v.* King (Miss.), 16 So. Repr. 245 (246), cited "Words and Phrases," "Tender Years," it is decided in an action of negligence that the phrase "minor of tender years," used in various connections in pleadings, "may embrace as well minors of twenty years as of twenty months. It cannot be said absolutely what is or what is not a tender age; . . . little more effect can apparently be given to the phrase 'minor of tender years,' than that it indicates a minor not endowed with the discretion of maturity."

From this judicial statement not only, but also a common sense consideration, not only the age of minority, but also the mental or physical qualifications or weaknesses, must be counted upon in determining what is "tender years;" and we here note that the expert witness, Dr. Washburn, testified that James Herliky is an "imbecile." Imbecility, as defined by Duranton, approved in Delaware *v.* Parish (N. Y.), 1 Dedf. 1, 115, citing Liv. 1, title 11, § 713, "is that feebleness of mind which, without depriving the person entirely of the use of his reason, leaves only the faculty of conceiving ideas the more common, and which relates always to physical wants and habits:" Words and Phrases, "Imbecility." See, also, on this point, our reference to the case of Rex *v.* Friend, later in this opinion.

Judged by these standards and what was otherwise apparent of the extreme mental weakness, lack of discretion and understanding, incompetency of intelligent action by the infant, James Herliky, to the jury there is not the possible doubt that he was constitutionally a subject of those weaknesses of

intellect bringing him within the class of those of "tender years, unable to provide for and take care of himself;" and, in view of his own evidence and appearance upon the stand, the jury must have been so satisfied, and we distinctly charged to take those features into consideration in giving effect to his evidence, in the giving of which we were satisfied he was not entirely incompetent, "idiocy" and "imbecility" being distinguishable on this point, as see Words and Phrases, "Imbecility," "Imbecile," "Idiocy," "Idiot," and all standard dictionary definitions of these terms.

The same reasoning, we have just concluded, furnishes support to the conclusion, if material of proof under the statute, which we also do not now decide as not within the language of the statute we are interpreting, that James Herliky was incapable of determining and acting upon his rights to withdraw from his employment and return permanently to his home or elsewhere before the conduct of the defendant had visited upon him his physical misfortunes, and is proven by the evidence, not only by the testimony, but also amputated members of his body exhibited in person on the witness-stand.

And this brings us to another phase of the case which escaped our notice, and of which attorneys stated their ignorance at the trial and was only brought to our attention by the defendant's attorney on the argument of this rule, viz., an error in punctuation of this 90th section of the Act of 1860, in Purdon's Digest of Statutes, by a semi-colon following the word "same," fourth line, while in the volume of 1860 Statutes it is a comma.

The significance of this difference of punctuation is apparent; the correct punctuation by a comma connects the language which precedes it with the later words of the section, "whereby his life shall be endangered or his health shall have been or shall be likely to be permanently injured," necessarily meaning that an indictment will lie for the default assigned in the second as well as the third count in the one at bar, only where such danger to life or injury to health is its result, and, consequently, mere refusal or neglect, "wilfully and without excuse," to provide the "necessary food, clothing or lodging" is not sufficient; the attorney for the defendant so insists, and to this interpretation we concur. He further urges that the omission from the second count of the indictment of the language setting forth the consequences of such treatment to the infant, Herliky, is fatal, and either a new trial or arrest of judgment must follow for that reason. Our opinion is *contra* that this defect in the indictment is amendable: Act of 1860, relating to amendments, being 13th section of Criminal Code; Com. *v.* Lambrecht, 3 Pa. C. C. Reps. 323; and the evidence fully supports the omitted allegations, and being admitted, we think correctly, although under objections, is equivalent to allowing the indictment to be thus amended by inserting between the words "same" and the period immediately following, in the tenth line of the second count in the indictment at bar, the words "whereby the health of the said James Herliky shall have been or is likely to be permanently injured," with same effect as if upon motion before jury empaneled or sworn or plea entered.

The fact that the indictment was not then attacked on this ground, but sought to be availed of by objections to the evidence at the trial, makes appropriate the application of the rule of the court in a similar case, reported as Rex *v.* Friend, in Russell & Ryan, Crown cases, page 20, where a similar indictment as at bar did not contain any allegation that the minor offended against was of "tender years," and, on conviction, the objection was raised and claim made that judgment should be arrested; but the court held that, as the only objections previously made were upon the trial and only "to the evidence not supporting the indictment, rather than to the indictment itself"—
3 D. & C.

Commonwealth *v.* Colwell.

while there were some differences among the judges—the prisoner should suffer the whole of his imprisonment, and we conclude the objection thus raised is not sufficient to warrant either a new trial or arrest of judgment in this case, treating, as we might, the present motion as for either or both, suggested by the citation Com. *v.* Cochran, 23 Lanc. Law Rev. 267, in Vale's Digest, col. 5548.

We are not satisfied that we committed any substantial error in our charge to the jury, whether generally or in answer to the defendant's requests; only fundamental error will be considered: Com. *v.* Taylor, 78 Pa. Superior Ct. 386; Com. *v.* Scherer, 266 Pa. 210 (215). Neither do we think there was any evidence admitted so especially applying to the third count, which we charged was insufficiently proven, tending to unduly and improperly affect the minds of the jurors in passing upon the remaining counts, as defendant's counsel urgently contends, and after more mature consideration since the trial, we are almost persuaded there was sufficient evidence to have submitted the question of defendant's guilt or innocence on the third count as well as the others.

Unmoved by the pathetic features of the case disclosed by the testimony, and particularly the mental and physical deficiency of the infant, James Herliky, apparent when he was on the witness-stand, and against the influence of which we particularly admonished the jury, we are unable to come to any other conclusion than that this rule must be dismissed.

And now, to wit, Nov. 14, 1922, rule for new trial is discharged and arrest of judgment refused; exceptions noted and bill sealed for defendant.

From Gerritt E. Gardner, Montrose, Pa.