## THE STATE v. ELIAKIM COOPER.

1. An attempt to do a wrongful act is not a crime or misdemeanor, if the act attempted is not a criminal offence.

2. To cause or procure abortion before the child is quick, is not a criminal offence at common law, and has never been made so by statute in New Jersey.

3. An attempt made to cause an abortion when the woman is not quick with child, if made with her consent, is not an indictable assault upon her: the consent of the party takes away the criminal character of the assault.

4. To cause abortion when the child is quick, is not murder or manslaughter at common law, but a great misdemeanor.

5. Although the law, for many civil purposes, recognises the existence of a child from its conception, it does not, for the purpose of punishing its destruction, recognise it as a living being until it quickens or stirs in the womb.

6. It is not an assault to cause abortion upon a woman not yet quick with child, if done with her consent. It is only in cases of high crimes that the person assaulted is incapable of assenting.

This case was upon an indictment found in the Oyer and Terminer of Morris county. On a motion to quash the indict-

ment, that court had reserved the question of the sufficiency of the indictment for the advisory opinion of this court, and the argument was had upon a case stated and certified to this court.

The offences charged in the indictment appear in the opinion of the court.

Argued before the CHIEF JUSTICE, and RANDOLPH and OGDEN, Justices, by *Scofield* and *Attorney General,* for the state, *Whelpley,* for defendant.

The CHIEF JUSTICE delivered the opinion of the court.

The only point reserved, and submitted for the opinion of this court, is whether *an attempt* to procure an abortion, the mother not being quick with child, is an indictable offence at the common law. It may simplify the inquiry to consider whether the procuring an abortion under such circumstances constitutes a crime. If the character of the act itself, when accomplished, be clearly *ascertained,* we shall be enabled with more certainty to decide upon the character of a mere *attempt* to commit the act.

Is, then, the procuring of an abortion, either by means of potions or of an operation used by the mother herself, or by another with her consent, an indictable offence at the common law, unless the mother be quick with child?

Undoubtedly the commission of such an act without the consent of the mother is indictable, as an assault upon the mother. The indictment in this case, charging, as it does in one count, that the defendant assaulted the mother and administered the potions, and in the other, that he made the assault and used violence to procure an abortion, is clearly good, and the court were right in refusing to quash. The indictment charges an assault with circumstances of aggravation. The offence charged is against the person of the mother, and is presumed to be, as in all other cases of assault, without her consent.

But when no assault is alleged or proved, where the act is done by the mother herself or with her assent, a very different question is presented. It was insisted indeed, upon the argu-

ment, that the assent of the mother was null; that the offence was of so high a nature that no assent of hers could purge its criminality. But this, it is obvious, is begging the question. The charge of assault, of an offence against the person of the mother, is clearly purged of criminality by her assent. The ingredient which, according to the argument, gives character to the offence, and takes away the power of the mother to consent, is the attempt to procure abortion, which it is alleged is an offence against the person of the child. But the very point of inquiry is, whether that be at all an offence or not, and whether the child be *in esse*, so that any crime can be committed against its person.

In regard to offences against the person of the child, a distinction is well settled between its condition before and after its birth. Thus, it is not murder to kill a child before it be born, even though it be killed in the very process of delivery. *Hale's P. C.* 433.

There appears to be at the common law a distinction equally well settled between the condition of the child before and after the mother is quick. "Life," says Blackstone, "begins in contemplation of law as soon as an infant is able to stir in the mother's womb." 1 *Bl. Com.* 129.

It is not material whether, speaking with physiological accuracy, life may be said to commence at the moment of quickening, or at the moment of conception, or at some intervening period. *In contemplation of law* life commences at the moment of quickening, at that moment when the embryo gives the first physical proof of life, no matter when it first received it.

The offence of procuring an abortion seems, by the ancient common law writers, to be treated only as an offence against life. Thus Coke says, "If a woman be quick with child, and by a potion or otherwise killeth it in her womb, or if a man beat her whereby the child dieth in her body, and she is delivered, this is a great misprision, but no murder." 3 *Inst.* 50. It was anciently holden that the causing of an abortion by giving a potion to, or striking a woman big with child, was murder; but at this day it is said to be a great misprision only,

and not murder, unless the child be born alive, and die thereof. 1 *Hawk. B.* 1, c. 31, § 16.

If a woman be *quick* or *great* with child, if she take, or another give her any potion to make an abortion, or if a man strike her, whereby the child within her is killed, it is not murder nor manslaughter by the law of England, because it is not yet in *rerum naturæ*, though it be a great crime. 1 *Hale's P. C.* 433. If a woman be quick with child, and by a potion or otherwise killeth it in her womb, or if any one beat her whereby the child dieth in her body, and she is delivered of a dead child, this, though not murder, was by the ancient law homicide or manslaughter. But the modern law doth not look upon this offence in quite so atrocious a light, but merely as a heinous misdemeanor. ,1 *Bl. Com.* 129.

In two of these authorities (*Hale* and *Hawkins*) the term " *big* " or " *great* " is obviously used as tantamount to " *quick.*" In all of them, the authors are treating of the crime of murder, of the offence against human life; and they distinguish between the destruction of the life of the infant before and after birth. There is in none of them a reference to the mere procuring of an abortion by the destruction of a *fœtus* unquickened, as a crime against the person or against God and religion. *Abortion*, as a crime, is to be found only in modern treatises and in modern statutes. No trace of it is to be found in the ancient common law writers. Bracton, indeed, uses language which at first view might seem to favor a different conclusion. He says, " *Si aliquis, mulierem pregnantem percusserit, vel ei venenum dederit, per quod fecerit abortionem, si puerperiem jam formatum fuerit, et maxime si animatum, facit homicidum.* Bracton, L. 3, c. 21.

He is treating, however, of the crime of homicide, and it is perfectly certain, by the unanimous concurrence of all the authorities, that that offence could not be committed unless the child had quickened.

So far as my researches have gone, I have found no precedent, no authority, nor even a *dictum* (prior to Lord Ellenborough's act, 43 *Geo.* 3, c. 58,) which recognizes the mere procuring of an abortion as a crime known to the law.

There is a precedent in 3 *Chitty's Crim. Law* 557, which has been frequently referred to in support of the principle, that an attempt to procure an abortion was a crime at the common law. Properly considered, however, it is rather an authority the other way. It charges, in each of its counts, an assault by the defendant upon the mother; it is, indeed, a mere indictment for an assault with circumstances of aggravation. It contains no count for the mere procuring of an abortion, or for an attempt to commit the offence; thus affording a strong indication that the pleader deemed some other ingredient necessary to constitute a crime. It has been well observed, moreover, that the indictment contains averments, which if not directly, yet by necessary or fair implication, show that the child had quickened. It is remarkable, too, that this indictment was drawn at Trinity term, 42 *Geo.* 3. The next year Lord Ellenborough's act was passed, declaring the procuring of an abortion, though the mother be not quick with child, a felony. It seems not improbable that a supposed defect in the law, in the very particular now under consideration, led to the passing of the act.

The distinction, thus clearly recognised in the ancient law, between the condition of the child, and the consequent criminality of an act tending to its destruction, before and after quickening, has been fully recognised by the earlier legislation upon the subject. Thus the statute 43 *Geo.* 3, makes it a capital offence to cause the miscarriage of a woman quick with child, and a felony of a mitigated character to cause a miscarriage before the quickening.

The earlier legislation in this country upon the subject recognises the same distinction. 2 *Rev. Stat. New York* (1829) 661, 38, 9; 694 § 21; *Rev. Stat. Ohio* (1804) 252; *Rev. Stat. Conn.* (1838) 145, § 15. It is only in very recent statutes that the distinction has been abolished.

By the laws of most countries, this crime is punished with more severity if committed after the quickening than before. The Roman penal code made the same distinction. *Male's Jur. Med.* 113.

It is true that, for certain civil purposes, the law regards an infant as *in being* from the time of conception, yet it seems no

where to regard it as *in life*, or to have respect to its preservation as a living being. So if the mother be convicted of a capital offence, the mere fact of pregnancy is of no avail to stay execution of the sentence of death. It is only when the mother is found "quick with child" that the sentence is respited till after delivery. 4 *B. C.* 395.

In a modern case, a distinction was taken, by a learned judge upon the circuit, between the terms "*quick with child*" and "*with quick child*," and it was said that the former term means simply having conceived. *Regina* v. *Wycherley*, 8 *Car. and P.* 262. There is no foundation whatever in law for this distinction. The ancient authorities show clearly that the terms are synonymous, both importing that the child had quickened in the womb, and that the period had arrived when the life of the infant, in contemplation of law, had commenced. *Sarah Baynton's case*, 14 *State Trials* 634; 1 *Hale's P. C.* 368; 4 *B. C.* 395.

In England there does not appear to have been any adjudication upon the point now under consideration. But the Supreme Court of Massachusetts have decided that the procuring of an abortion, unless the mother be quick with child, is not an indictable offence at the common law. *Commonwealth* v. *Parker*, 9 *Metc.* 263; *Commonwealth* v. *Banks*, 9 *Mass.* 388.

Two modern elementary writers upon criminal law, of acknowledged reputation, have given some countenance to the idea, that the mere attempt to procure an abortion is an indictable offence at the common law. 1 *Russell on Cr.* 540; *Roscoe's Crim. Ev.* 190. Neither of them, however, states the principle with confidence, or distinguishes between the condition of the child before and after quickening. Both refer to the precedent in *Chitty's Crim. Law* as the only authority for the proposition. That precedent, as has been seen, does not support the doctrine. See, also, 1 *Lewis's Crim. Law*, 1, *note b.*

In a recent American treatise upon criminal law, the proposition, that the procuring of an abortion was indictable at the common law, had been stated, and advocated with much learning. *Wharton's Crim. Law* 308; *Wharton's Prec.* 108. The only direct authority cited in support of the doctrine, is

the case of *The Commonwealth* v. *Demain*, decided by the Supreme Court of Pennsylvania, at January term, 1846, and reported in 6 *Penn. Law Journal* 29. Although in that case the point appears to have been elaborately argued by counsel, it does not appear to have been decided by the court. On the contrary, the court are reported as declaring that the indictment before them sufficiently averred that the party injured was pregnant and *quick* with child, which was destroyed and killed. The obvious inference would seem to be, that the court regarded the fact, that the child was quick (either by direct averment or necessary implication), as essential to the validity of the indictment. It is difficult to perceive how the court could, in any aspect of that case, have sustained the demurrer. The indictment (like the precedent in *Chitty*) charged that the defendant committed an assault upon the woman, and was clearly a good indictment at common law.

We are of opinion that the procuring of an abortion by the mother, or by another with her assent, unless the mother be quick with child, is not an indictable offence at the common law, and consequently that the mere attempt to commit the act is not indictable. There is neither precedent nor authority to support it. If the good of society requires that the evil should be suppressed by penal inflictions, it is far better that it should be done by legislative enactments than that courts should, by judicial construction, extend the penal code or multiply the objects of criminal punishment. We deem it unwise upon this subject to occupy debatable ground. A reasonable doubt should be resolved in favor of the accused.

The indictment is valid ; but if upon the trial it appears that the means used to procure the abortion were used with the consent of the mother, the defendant must be acquitted. (*a*)

RANDOLPH and OGDEN, Justices, concurred.

(*a*) This decision induced the legislature to amend the criminal code, so as to make the offence in question a crime. *Vide* act of March 1, 1849, *Pam.* 266.

CITED *in State* v. *Murphy*, 3 *Dutch.* 114.