THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JEAN MAX ELLRICH AND MARY ELLRICH, DEFENDANTS, AND HOWARD A. WELCHER, DEFENDANT-APPELLANT.

Argued June 16, 1952—Decided June 26, 1952.

147

148

*Mr. Frank G. Schlosser* argued the cause for appellant.

*Mr. Paul T. Huckin,* Deputy Attorney-General, argued the cause for the State (*Mr. Harry L. Towe,* Deputy Attorney-General, Acting Prosecutor of Bergen County, attorney).

The opinion of the court was delivered by

WACHENFELD, J.   The appellant, having been convicted by a jury on an indictment for abortion, appeals, claiming he did not instigate the chief actor to perform the unlawful operation and accordingly is not criminally responsible and a judgment of acquittal in his favor should have been or-

dered. He also alleges the verdict was against the weight of the evidence, there was error in the admission and rejection of certain testimony, in the charge of the court and in its refusal to charge as requested.

A young, single woman residing in Somerville, accompanied by her aunt, visited the defendant, a practicing physician, at his office, 7900 Hudson Boulevard, North Bergen. The young lady told him she was pregnant and asked his help. He refused but "gave me the name of a person who perhaps could help me. He wrote a name and telephone number on a slip of paper and told me to go across the street to a drugstore, I believe it was, and to call this number and say that I was calling from 7900 Hudson Boulevard." The name and number were those of Jean Ellrich.

The woman followed the instructions and as a result of her telephone call she and her aunt went to the Ellrich home in Fairview and made arrangements with him and his wife to have the operation performed about two weeks later. They paid a fee of $800. She testified "he performed the abortion or attempted to" but the proceedings were interrupted by the arrival of the police, who presumably took all present into custody. At their request, a physician made an examination of the patient and testified there had been an attempted abortion which had not been successfully completed.

Jean Ellrich and his wife, Mary, who were also indicted, withdrew their pleas of not guilty and pleaded *non vult* on the day of the defendant's trial. The defendant did not take the stand in his own defense nor was any evidence on his behalf offered. The jury returned a verdict of guilty, sentence was imposed, and from the judgment so rendered this appeal is taken and is certified here on our own motion.

The appellant insists the mere giving of the name and address of the one who would perform the unlawful operation does not constitute him an accomplice under our law. As he expresses it, "to incur criminal responsibility under the abortion statute as it is worded, something more than a conversation with the woman is required."

We do not feel called upon to answer so narrow an inquiry, as in our conception of the case the facts so admitted are embellished with a myriad of circumstances the reasonable and logical inferences of which spell out quite clearly and convincingly a criminal concert of action.

Guilty knowledge and a desire for concealment are permissible inferences from the prohibition against the using of the defendant's telephone and the specific instructions to use the pay telephone "across the street." The precaution of using a street address instead of a name to introduce the person making the call implies a knowledge of the criminal nature of the transaction and evinces a pre-arranged code between the defendant and Ellrich by which the latter could identify the forwarding agent; while the long journey from Somerville to North Bergen by the victim intimates knowledge that her quest, apparently difficult of accomplishment elsewhere, would be successful here. By referring the patient to a layman, the defendant signified a consciousness that the help sought was not medical treatment or prenatal care but was instead what actually happened.

If the defendant personally arranged with the abortionist for the performance of the illegal operation, he would admittedly be guilty. Likewise, one who directs a woman, under the circumstances here proven, to a third party for the purpose of having such an operation performed, aids and abets in the offense and may be found by the jury to have acted in concert with the chief offender and so be guilty as a principal.

"One is an 'aider and abettor' in the commission of a crime where he was an active partner in the intent which was the crime's basic element." *Commonwealth v. Strantz*, 328 Pa. 33, 195 A. 75 (*Sup. Ct.* 1937).

The term has been defined in similar language in many jurisdictions. *Robertson v. State*, 23 Ala. App. 267, 125 So. 60 (*Ct. Apps.* 1929); *Boggs v. Commonwealth*, 153 Va. 828, 149 S. E. 445 (*Sup. Ct. Apps.* 1929); *Shelton v. Com-*

*monwealth,* 261 *Ky.* 18, 86 *S. W. 2d* 1054 (*Ct. Apps.* 1935) ;
*Pearce v. Territory,* 11 *Okl.* 438, 68 *P.* 504 (*Sup. Ct.* 1902).

"In misdemeanors, all who aid, abet, or participate are principals, and all are equally guilty." *Engeman v. State,* 54 *N. J. L.* 247 (*Sup. Ct.* 1892) ; *State v. Wilson,* 79 *N. J. L.* 241 (*Sup. Ct.* 1910), affirmed 80 *N. J. L.* 467 (*E. & A.* 1910).

A defendant may be convicted of a misdemeanor under an indictment charging him with the actual commission of the criminal act although he was not personally present and would, in the case of a common law felony, be liable only as an accessory. The reason set forth in *Stale v. Wilson, supra,* and *State v. Riccio,* 90 *N. J. L.* 25 (*Sup. Ct.* 1917), in both of which the factual situation is similar to the case *sub judice,* is "that such an indictment charges the defendant according to the legal effect of the offense, and therefore the defendant is, in legal effect, guilty of using the instrument for the criminal purpose."

The applicable rule recognized by our courts is stated in 1 *Am. Jur., Abortion, sec.* 8, *p.* 134:

"The accused may be convicted as a principal even though it was not shown that he himself handled the instrument that was used if he was present aiding and assisting in the operation for the purpose of procuring the miscarriage and if anyone else was using the instrument for that purpose. And though the accused was absent at the time that the act was performed, he has been held punishable where he counseled, induced and procured the crime to be committed."

Here the victim's testimony that she had no prior acquaintance with the Ellriches and met them only as a result of their name and phone number being supplied by the defendant is nowhere challenged or denied. It is not even suggested that she was referred to them for any purpose other than the illegal operation that was subsequently attempted. The defendant was an essential link and, apparently, a conscious one in the chain of events leading up to the commission of the offense. There is sufficient evidence of concerted action in the record to sustain the verdict reached by the jury.

The appellant asserts there was error in admitting testimony concerning the events which took place at the Ellriches when he was not present. He concedes, however, that "in an abortion prosecution the acts and declarations of the chief actor are admissible 'after testimony as to a concert of action between him and the defendant had been admitted,'" citing *State v. Wilson, supra.*

As there was sufficient evidence from which the jury might conclude a concert of action existed between Ellrich and the defendant, the testimony concerning Ellrich's actions was admissible.

It is next urged there was error in excluding evidence of the birth of the child alive some five months after the attempted abortion. This testimony, it is claimed, was material because it might have shown no attempted abortion was committed.

Evidence of this type is normally relevant to the issue, but its exclusion here was not prejudicial. There was testimony of the girl and of her aunt as to the commission of the offense charged, confirmed by the doctor who examined the girl on the same night. These circumstances, plus the fact that the prosecution was based upon merely an attempted abortion while the question was pressed because "if the baby was born, certainly there couldn't have been any successful abortion," make the exclusion of the testimony concerning the subsequent birth of the child harmless.

Then too the record indicates that the adroit maneuvers of counsel supplied the desired information to the jury despite the court's ruling. We see no error.

A portion of the charge is complained of in which the court instructed the jury concerning the guilt of a person who refers a pregnant woman to another for the purpose of having a miscarriage produced. While the cited paragraph is open to some criticism, the court went on to expound the law clearly and correctly, stating:

"The law says that upon proof of concerted action between him and the person to whom the woman was sent, the defendant so in-

dicted may be convicted under that rule and under the rule that all concerned in a misdemeanor are equally guilty, for it is the law in our State that all concerned in a misdemeanor, whether actually taking part as agents or whether acting as principals, all are equally guilty. In the instant case, therefore, you are called to pass upon the guilt or innocence of this defendant, and you have to determine what the facts were and whether there was proof in the State's case as to a concerted action between the defendant Dr. Welcher and these two defendants who, according to the State and according to their plea, actually committed the offense of administering the surgical instrument and inserting it into this complaining witness. Aller."

In the recent case of *State v. Peterson,* 10 *N. J.* 155 (1952), we declared:

"In ascertaining whether or not error was committed, a single sentence may not be extracted and construed without regard to the context of the entire charge. The charge must be read as a whole in the light of a sensible construction to determine its legal worth."

The test is "how and in what sense, under the evidence before them and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole." *State v. Pitman,* 98 *N. J. L.* 626 (*Sup. Ct.* 1923), affirmed 99 *N. J. L.* 527 (*E. & A.* 1924).

Judged by this standard, the entire charge was not such as to confuse or mislead the jury nor convey to them an erroneous understanding of the legal principles to be applied.

Objection is next made to part of the charge dealing with the defendant's failure to testify. The court instructed the jury that when facts have been testified to "which, if true, prove or tend to prove that the defendant is guilty and he by his own oath can deny these facts, his failure to testify in his own behalf raises a strong inference that he cannot truthfully deny those facts."

The court, however, carefully pointing out to the jury that mere failure of the defendant to take the stand in his own defense was not in itself evidence of guilt, stressed the necessity of direct evidence to connect the defendant with the crime, saying there must be such proof "in order to charge

154

such a failure to testify." Since there is in the record ample testimony on which the jury could find the defendant acted in concert with the Ellriches to procure the commission of the wrongful act, there is no error in the charge in the respect complained of.

The last ground for reversal advanced by the appellant is alleged error in the court's refusal to make certain requested charges relating to the criminal responsibility of the accused. An examination of the entire charge, however, reveals that the court correctly instructed the jury on the applicable law prevailing in this State, emphasizing the defendant could be found guilty only if there was concerted action between him and the Ellriches and concluding: "If there is not proof of concerted action, then you may not find the defendant guilty under our statute."

The court need not charge in the exact language requested provided the subject matter of the request has been fully and correctly covered, nor has the defendant the right to choose the language in which the court should state the pertinent instructions. *State v. DePaola*, 5 *N. J.* 1 (1950); *State v. Bunk*, 4 *N. J.* 461 (1950); *State v. Tansimore*, 3 *N. J.* 516 (1950).

We find no harmful error in the record nor does it appear the verdict was against the weight of the evidence or the result of mistake, partiality, prejudice or passion. *Rule* 1:2–19(*a*).

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For reversal*—Justice HEHER—1.