56 N.J. Super. 438 (1959)
153 A.2d 364
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM G. THOMPSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 18, 1959.
Decided July 6, 1959.
*440 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. William G. Thompson pro se (Mr. Albert G. Besser, assigned counsel for defendant-appellant on the brief).
Mr. John G. Thevos, Prosecutor, attorney for plaintiff-respondent (Mr. Edward J. Wolak, of counsel and on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from a judgment of conviction and an order denying a motion for a new trial in the Passaic County Court.
On January 23, 1957 after a protracted trial, defendant was found guilty of the crime of abortion as defined by N.J.S. 2A:87-1:
"Any person who, maliciously or without lawful justification, with intent to cause or procure the miscarriage of a pregnant woman, administers or prescribes or advises or directs her to take or swallow any poison, drug, medicine or noxious thing, or uses any instrument or means whatever, is guilty of a high misdemeanor." (Emphasis ours)
At the same trial William Trotter was acquitted upon a separate indictment charging him with aiding and abetting Thompson contrary to the provisions of N.J.S. 2A:85-14. The defendant was sentenced on February 15, 1957 to a term of not less than 12 nor more than 15 years in State Prison, which term he is presently serving. Defendant filed *441 a notice of appeal to this court on May 7, 1957. While this appeal was pending, he filed a motion for a new trial upon the grounds of newly discovered evidence, which was dismissed by the County Court because of the pendency of the appeal, R.R. 3:7-11. On June 27, 1957 this court appointed counsel upon defendant's application. On December 27, 1957 we granted defendant's motion to reinstate the motion for a new trial, and on April 11, 1958, after a plenary hearing, the motion was denied. On June 26, 1958 the request of assigned counsel that he be permitted to withdraw was granted and defendant was ordered to prosecute the appeal pro se. He then perfected his appeal. When the briefs and record were submitted to us in advance of the hearing date, the record suggested the possibility of error which had not been raised by defendant's brief. The court then offered defendant counsel, and the offer being accepted, Mr. Besser was appointed in such capacity. We have outlined the post-judgment progress of the case to make clear that the procedure has been orderly, despite the seemingly lengthy period of time intervening between the date of conviction and the hearing of the appeal.
The crucial questions to be determined are whether or not the court committed error in its charge (to which no objection was noted) and if so, whether it is such as to require reversal under R.R. 1:5-1 as "plain error."
The factual synthesis developed at the trial was the following:
Thelma B., a married woman ten weeks pregnant, died on July 28, 1956. An autopsy disclosed that the cause of death was a massive inter-abdominal hemorrhage resulting from two perforations of the uterus. In the early part of February 1956 Thelma met Trotter, a married man, in a cocktail lounge in which he was employed as a bartender. A friendship developed, in the course of which they had sexual intercourse. On June 23, 1956 Thelma informed Trotter that she was pregnant and insisted that, if he "did not do something about it," she would tell his wife. On *442 the following evening Thompson came to the bar with a female companion. Trotter told his troubles to Thompson. At Thompson's suggestion a meeting was arranged with Thelma immediately, and about midnight they called at her apartment, Thompson bringing with him a bag and a syringe. Thompson talked with Thelma out of Trotter's presence and, upon rejoining him, told him not to worry. They then left. About a month went by while Thelma was on a vacation. During this time she sent a letter to Trotter stating "Nothing yet. See you soon." Upon her return, Thelma again threatened that if Trotter did not "do something" she would tell his wife. Trotter relayed this information to Thompson, who said he would talk to her again and a meeting of Thelma and Thompson was arranged by Trotter for July 27, 1956. Late in the evening of that day, Thompson admitted Thelma to his apartment and, according to him, he then left for his shop. He stated that he returned 15 or 20 minutes later to find Thelma in the bathroom complaining of a stomach ache. He asked her to lie down and then walked into the kitchen to make a cup of tea, at which time he saw Thelma fall down, unconscious. Thompson then called a girl friend who came to the house. They replaced part of Thelma's clothing. She had been unclothed from the waist to the knees. They then went to Thelma's car, drove around for a time and, eventually, took her to the entrance of her home. There Thompson had a conversation with Mrs. Conover, a roommate of Thelma. He then left. Shortly thereafter Mrs. Conover called the police who arrived with an ambulance. The victim was taken to the Barnert Memorial Hospital in Paterson where she died.
The State concedes that its case was purely circumstantial but contends that under the authority of State v. Siciliano, 21 N.J. 249 (1956), there was sufficient proof to enable a jury to find that Thompson perpetrated the crime. We have no doubt that this is so, particularly in view of the medical proof that it was improbable that the victim could have herself inflicted the internal wounds which were *443 found on autopsy. If the question presented dealt only with the weight of the evidence we would unhesitatingly affirm the conviction.
But the problem is not that simple. At the outset it is noted that the court in its charge confined itself to a discussion of the legal principles which it found to be applicable to the case. While this was the court's prerogative, and it is not herein criticized, the fact that the law was not keyed to the testimony is a factor to be considered when the ability of the jury to apply the law as the court stated it to be, is put in question. After stating that separate indictments were being tried together, one charging Thompson with "the crime of abortion causing death," the other charging Trotter "with aiding and abetting an abortion causing death," and reading to the jury the provisions of N.J.S. 2A:87-1 the court charged:
"One is an aider and abettor in the commission of the crime where he was an active partner in the intent, which is the crime's basic element. A defendant can be convicted of abortion, even though he did not actually participate in the use of the instrument by being present, aiding, abetting, and assisting. A defendant may be convicted under an indictment charging him with the actual commission of the criminal act, although he was not personally present when he aided and abetted in the commission of the criminal act and where there was sufficient evidence to show he was an essential and conscious link in the chain of events leading up to the commission of the abortion. One who aids and abets in the commission of a crime is equally as guilty as the principal actor.
Of course, one cannot aid and abet in the commission of a crime if no crime has been committed. Consequently, the defendant Trotter cannot be found guilty of aiding and abetting unless Thompson is first found guilty of the crime." (Emphasis ours)
The foregoing is a proper statement of the law. Cf. State v. Ellrich, 10 N.J. 146 (1952). But the query is, was it applicable to this case in which only Thompson was charged with the crime of abortion? We think not. The offense of abortion was unknown to the common law. State v. Cooper, 22 N.J.L. 52 (Sup. Ct. 1849). The procuring of a miscarriage where the woman was "quick with child" was deemed *444 "a great misprision" because of the offense against the child for which the woman herself could be prosecuted. The offense against the woman was treated as an assault to which assent was a complete defense. State v. Cooper, supra. The Cooper case led to an amendment of the criminal code in which the crime of abortion was defined by L. 1849, p. 266, in substantially the same language as appears presently in N.J.S. 2A:87-1 supra. In construing the statute, our courts have held that a woman who aborts herself is guilty of no criminal offense and so cannot be convicted either as a principal or as an aider and abettor. She is regarded as the victim of the crime and not as the criminal. In re Vince, 2 N.J. 443 (1949); State v. Hyer, 39 N.J.L. 598 (Sup. Ct. 1877); State v. Murphy, 27 N.J.L. 112, 115 (Sup. Ct. 1858). Obviously, to be an aider and abettor the existence of a principal is indispensable. On the evidence presented here there were but two persons who could have inserted an instrument in the body of the victim. One was the victim, the other the defendant. Since the requirement of N.J.S. 2A:85-14 is that one "must * * * aid * * * another to commit a crime," the legal incapacity of the victim to commit the crime of abortion precluded conviction of the defendant as an aider or abettor even though he may consciously have been an essential link in the chain of events leading up to the fatality.
Considered in this setting the portion of the charge quoted above was plainly erroneous. As we have emphasized, only Thompson was charged with the commission of the crime. It is clear from the record, and indeed stressed by the State, that throughout the trial the narrow issue was whether Thompson performed the operation or whether, as he claimed, the victim aborted herself in his absence. Thus, when the court charged that "a defendant may be convicted under indictment charging him with the actual commission of the criminal act although he was not personally present," it was open to the jury to find that since Thompson was the only defendant charged with the crime of abortion he should *445 be found guilty if he aided and abetted the victim, even though he was absent at the time of the occurrence. If this premise was adopted by the jury, the adverse effect on the defense was incalculable. The prominent part played by defendant in aiding and in counselling the victim, culminating in his providing her with the privacy of an apartment, was convincingly proved, and his partnership in a nefarious conspiracy, of which incidentally, both he and Trotter were subsequently convicted, was amply demonstrated. Lack of presence at the time the miscarriage was brought about was basic to his defense. If the jury understood from the charge that he could be convicted although absent, no vestige of defense remained.
The charge had great potentiality for harm in another respect. Nowhere in the instructions was the jury told that should they find the miscarriage to have been induced solely by the act of the victim herself, neither defendant could be found guilty of the charges laid against them. The components of the crime of "abortion" were described in a way so general that to the lay minds it might likely occur that if the victim aborted herself Thompson could be held as an aider and abettor.
We find to be persuasive the argument that to the lay mind an "abortion" means the inducement of a miscarriage not necessarily attended by those circumstances which make the act criminal under our statute. To the layman, if a woman induces her own miscarriage, that act constitutes an abortion even though she is criminally not accountable for her behavior. "Abortion" is defined in Webster's New World Dictionary (Col. ed. 1952), 4 as:
"the expulsion of the human fetus prematurely, particularly at any time before it is viable; miscarriage."
and Perkins, Criminal Law (1957), p. 99 has this to say:
"There has been an unusual lack of precision in the use of words in this field. The word `abortion' in the dictionary sense, means *446 no more than the expulsion of a fetus before it is capable of living. In this sense it is a synonym of `miscarriage.' With respect to human beings, however, it has long been used to refer to an intentionally induced miscarriage as distinguished from one resulting naturally or by accident."
We are mindful of the established rule that in ascertaining whether or not error was committed a single sentence may not be extracted and construed without regard to the context of the entire charge, but that the charge must be read as a whole in the light of a sensible construction to determine its legal worth. State v. Ellrich, supra; State v. Peterson, 10 N.J. 155 (1952). And we recognize that the test is "how and in what sense, under the evidence before them and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole." State v. Ellrich, supra; State v. Pitman, 98 N.J.L. 626 (Sup. Ct. 1923).
With these principles in mind, we find harmful error in the charge in the respects in which it has been criticized. Specifically, it is our conclusion that quoted portions of the charge were likely to have created a misunderstanding that a conviction could be founded on the proof of the aid rendered to the victim by the defendant; and that the likelihood of such misunderstanding was enhanced by the failure to instruct the jury that the victim lacked legal capacity to commit the crime of abortion. In our judgment the error committed was of such magnitude as to be regarded as "plain error." R.R. 1:5-1(a).
This disposition makes it unnecessary for us to consider the remaining points raised. The judgment is reversed and a new trial ordered.
SULLIVAN, J.A.D. (dissenting).
It is my conclusion that the portion of the court's charge held by the majority opinion to be prejudicial to Thompson and to constitute harmful error did not refer to Thompson at all, but rather to his co-defendant Trotter.
*447 I concede that the charge could have been a better one. It must be read, however, in the light of the indictments, the evidence presented at the eight-day trial, the claim of the State, and the defense asserted. In substance Thompson was charged with committing the abortion by the use of an instrument. Trotter, who was charged with getting him to do it, has been acquitted, so he is no longer in the case. Thompson's defense was that he had done nothing more than permit the woman to use his apartment for the purpose of aborting herself, and that she had in fact performed the abortion on herself. To this defense the State produced expert medical testimony that because of the kind, method and manner of abortion performed it was "highly improbable" that the woman did it herself, and that it would have been "almost impossible" for her to do so.
The case, therefore, resolved itself into the clear position taken by the State that Thompson had actually performed this abortion on the woman and that she could not have done it herself. The summation by the State at the close of the case points up this single factual issue.
"What must the State prove in this particular case? We must prove, first, that with the intent to cause the abortion of a pregnant woman an instrument `of some sort or means whatever' was used. There is no question that Thelma Barcus was pregnant. The doctor testified to that. He found a two-and-a-half-month-old foetus or unborn child in the uterus of Thelma Barcus. So we will forget that.
Secondly, that some sort of an instrument was used upon her, by the perforations he described in the uterus, and that they were used with the intent to cause the miscarriage of Thelma Barcus, because, as you remember, he testified that the foetus had been displaced. So there is no question about that.
The question is, Did Thompson do it and did Trotter seek him out to do it? We don't have to prove that Trotter was there that night. If Trotter asked him to do it and he knew that he was going to do it, that is aiding and abetting."
Further on in its summation the State says:
"The question that you have to decide is, From the evidence presented is it clear in your minds beyond a reasonable doubt that Thompson performed this abortion on Thelma Barcus?"
*448 Later on we have this reference to Thompson:
"There is another factor, another piece in this jigsaw puzzle, to show that Thompson, the only one that was there, as sure as I am standing here, inserted that instrument, whatever it was, into the uterus of Thelma Barcus."
Nowhere did the State contend that Thompson was guilty if he did not actually perform the abortion himself. As a matter of fact, the State conceded in its summation that if Thompson were telling the truth, he had nothing to fear.
Against this background of the indictments, the testimony, the State's claim, and the defendant's story, we come to the court's charge.
The jury was told that there were two indictments: one against Thompson for committing the abortion, and the other against Trotter for aiding and abetting. The court then defined the crime of abortion under the statute and the necessary elements to establish guilt, one of which, under the particular indictment, was the use of an instrument. This part of the charge obviously referred to Thompson. Then the court took up the matter of aiding and abetting and in doing so used the language complained of. Trotter, however, was the one charged with aiding and abetting, so that this part of the charge related to Trotter only. The State's claim was that Trotter's only connection with the abortion was that he got Thompson to perform it. It was undisputed that Trotter was at Greenwood Lake when the abortion was performed. The court therefore told the jury that it could find Trotter guilty of aiding and abetting even though "he did not actually participate in the use of the instrument" and "although he was not personally present when he aided and abetted." I just do not see how the jury could have possibly understood that the court was talking about Thompson because the court went on to say that
"Of course, one cannot aid and abet in the commission of a crime if no crime has been committed. Consequently, the defendant *449 Trotter cannot be found guilty of aiding and abetting unless Thompson is first found guilty of the crime."
This cited language clearly defines and limits the use and application of the preceding paragraph.
The charge in question was not objected to at the trial, on the motion for a new trial, or even on this appeal. It was only after this court called the attention of the parties to the possibility of error therein, that the question was briefed.
The jury could not have found Thompson guilty unless it concluded that he had actually performed the abortion. That is what the indictment charged him with; that is what the State contended he did; and that is what the court told the jury it must determine. To say that the jury somehow might have found Thompson guilty even though it disbelieved the State's case and accepted Thompson's story as true, is to disregard the whole atmosphere and background of the trial.
I see no harmful error in the charge in the respects in which it has been criticized.