## Shelton v. Commonwealth.

(Decided Oct. 25, 1935.)

HENSON & TAYLOR for appellant.

BAILEY P. WOOTTON, Attorney General, and WM. A. SHUMATE, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At about 6 o'clock a. m., on August 14, 1932, W. B. Chamberlain, a farmer in Webster county, was assaulted, shot, otherwise wounded and robbed of $1,826

shortly after he entered his barn to feed his stock on that morning. The actual perpetrators of the crime who were then present and participated in it were Earl Pemberton and Clayton Scott, the latter of whom appears to have been temporarily residing in Evansville, Ind., while Pemberton was a roaming character with no settled home. The appellant and defendant below, J. Z. Shelton, was, and had been for a number of years prior thereto, a farmer in Webster county, Ky., residing not far from Sebree in that county, where his father and other relatives also resided. A brother of appellant owned and operated a pool room containing a lunch counter in Evansville, Ind., and we gather from the testimony in the record that alcoholic drinks could be obtained there also. Some month or more prior to the robbery of Chamberlain, with whom and whose habits appellant was acquainted, he, at least temporarily, left his farm and family and went to Evansville and accepted a position with his brother to aid and assist the latter in the operation of the pool room. During the time he was so engaged, or part of it, Scott and Pemberton visited the pool room more or less frequently but appellant does not appear to have become much acquainted with Pemberton, but he did form a more or less acquaintanceship with Scott, who, as a part of his occupation, engaged in trafficking in illicit liquor. He claims to have located and made arrangements whereby he could obtain some such liquor from a person in Webster county, and arranged to and did make a trip with an automobile for that purpose, during which time he was at Sebree with appellant.

The effort on that occasion was not crowned with success, because they did not meet the man who was to supply the goods. After the return to Evansville, Scott informed appellant that he had information that the man who was to furnish the liquor could be found at another place in Webster county, and appellant arranged with a garage operator in Evansville for Scott to procure an automobile to make the trip to see him. It was what is called a "You-Drive-It" car, and appellant paid for the use of it by Scott, but he says that it was obtained for an entirely different and innocent purpose. Scott kept the car until after the robbery had been committed.

Scott and Pemberton were indicted in which they were charged with committing the robbery. For some

reason, not appearing in the record, appellant was not accused therein, though a separate indictment was returned against him in which he was the only accused, and the offense with which he was therein charged was that of "unlawfully, willfully, maliciously and feloniously aiding, abetting, advising and encouraging" Pemberton and Scott in the commission of the crime. In other words, he was specifically charged as an aider and abettor of the two principals who were so referred to in the indictment against him, but who were not themselves jointly indicted with him.

At appellant's trial he was convicted and punished by confinement in the penitentiary for five years. His motion for a new trial was overruled, and, from the verdict and judgment pronounced thereon, he prosecutes this appeal, urging by his counsel three grounds for a reversal, which are: (1) That the testimony of Scott, who was introduced as a witness for the commonwealth at the trial, was not sufficiently corroborated under the requirements of section 241 of our Criminal Code of Practice to authorize a submission of appellant's guilt to the jury, or to sustain his conviction; (2) a fatal variance between the averments of the indictment and the testimony heard at the trial; and (3) error in the instructions given to the jury and in defining "constructively present," each of which will be determined in the order named.

1. Some prior opinions of this court construed the section of the Criminal Code referred to as requiring corroborative testimony of an accomplice to be sufficient within itself to sustain a conviction of the defendant on trial, independently of that given by the accomplice. But in the recent case of Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, 611, we exhaustively reconsidered the question and discarded the construction adopted in those opinions and approved other prior ones construing the section to the effect that the required "corroboration" testimony, in support of that given by an accomplice, would comply with the Code provision if it tended "to connect the defendant with the commission of the offense," but that it would not be sufficient for that purpose if it merely showed "that the offense was committed, and the circumstances thereof." The Williams opinion discusses the common-law rule and refers to opinions of courts of other jurisdictions, as well as some prior ones from this court up-

holding the conclusion therein reached. It is unnecessary for us to catalogue such authorities or to insert excerpts from the Williams opinion embodying our reasons therein employed, since any one interested in the subject may obtain such information by consulting that opinion, the conclusions in which we again approve.

Not only are the reasons employed in support of such conclusion convincing and logical, but it is also the only one that is justifiable from the language of the section itself. It does not require that the corroborating evidence must be sufficient in itself to authorize a conviction, since it expressly says that a conviction may be had on the testimony of an accomplice if his testimony is corroborated "by other evidence tending to connect the defendant with the commission of the offense." Therefore, if such other (corroborating) testimony or evidence has a tendency to connect the defendant with the commission of the offense for which he is on trial, other than merely showing that such an offense was committed and the circumstances of its commission, the requirement of the Code section is met, although such corroborating testimony might not be alone sufficient, without the aid of that given by the accomplice, to justify a conviction of the defendant on trial. As measured by that rule, we are inclined to the conclusion that there was sufficient corroboration in this case to meet the requirements of that section of the Code and that this ground relied on by learned counsel for a reversal of the judgment is unavailable.

2. Ground 2, urged for the same purpose, is more serious. Counsel on both sides by their industry have brought to our attention a long list of our prior opinions dealing with the proper practice concerning indictments, trials, and convictions of offenders against the criminal law as principals, aiders and abettors, accessories before the fact, etc., and in which it is shown to be the settled rule in this commonwealth that the extreme technicalities of the common law with reference to prosecutions for the different shades and grades of participation in the commission of crimes have largely been dispensed with, either by express legislative enactment or by judicial interpretation. So that now one may be convicted and punished as an aider and abettor of another, who was the actual principal, although the one so convicted was charged in the indictment as a principal; provided there be a principal jointly indicted

as such with the convicted aider and abettor, or at least that a principal be named in the indictment of the convicted defendant as being such.

Likewise it is competent under our present practice to jointly indict accessories before the fact with the actual perpetrators or principals in the commission of the crime and to punish them the same as principals, which is a statutory regulation as to certain offenses. But all such matters are foreign to the question that is raised and presented by the ground now under consideration. That question is: Whether or not an accused may be convicted under an indictment only accusing him of being present aiding and abetting a named but unindicted principal in the commission of the crime, when the uncontradicted testimony shows that at the time of its commission by the alleged principal the convicted aider and abettor was at least thirty miles away from the scene and rendered no immediate acts of assistance in its commission.

A negative answer to the question would by no means take away the right of the commonwealth, under numerous opinions rendered by us, to jointly indict an accessory before the fact with the actual perpetrator of the crime and to convict and punish him as a principal. But, before that may be done, the accessory on trial must have been accused *as such* in the indictment in some approved form or manner. In other words, we have not yet adopted the rule that one may be convicted under an indictment charging him with specific participation in the commission of a crime on proof of an entirely different participation, and which latter does not enter into the charged participation as an element thereof. Such statement of the law is most clearly set forth in our opinion in the case of Commonwealth v. Hargis, 124 Ky. 356, 99 S. W. 348, 30 Ky. Law Rep. 510. Prior cases of this court are referred to in that opinion sustaining the conclusion therein reached, and it has been uniformly followed continuously since then. The practice therein approved and adopted was bottomed on our interpretation of subsection 2, section 122, and section 126, of our Criminal Code of Practice. The first one says that an indictment must contain ''a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended; and with such degree of cer-

tainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." The second (section 126) says: "An indictment, except in the cases mentioned in the next section, must charge but one offense, but, if it may have been committed in different modes and by different means, the indictment may allege the modes and means in the alternative."

The indictment in the Hargis Case charged defendant and others with participation in the unlawful shooting and woundng of James Cockrill, and there were various counts therein in which one or more were charged as principals and the other as being present aiding and abetting, and such charges were alternately made so as to accuse each of the indicted defendants as principals and as aiders and abettors of his codefendants. Likewise there was a count in the indictment charging the defendants as conspiring with each other to commit the crime, which was later done by some one or more named ones in pursuance to such conspiracy. It was held therein that under our statutory and Code provisions it was competent to so draw the indictment, and the opinion overruled a demurrer filed thereto for duplicity. But the opinion did not stop there—it went further and proceeded to point out that, in order to sustain a conviction, the proof of the commonwealth must bring the acts and participations of the defendant on trial within some one or more of the alternative counts of the indictment against him, and which is but an application of subsection 2 of section 122, supra, requiring the charge in an indictment to be preferred in concise language "and in such manner as to enable a person of common understanding to know what is intended." The substance and effect of that construction and holding was and is that a defendant may be convicted under an indictment for his participation in the commission of an offense in any of the modes and means by which such participation may be performed by him; provided the indictment charges him with the proven mode or means that he pursued and that it was competent for the indictment to so alternatively accuse him. Here the indictment against appellant accused him of only being present aiding and abetting two named principals; while the testimony showed that he was neither actually, nor constructively, present within any approved definition of those terms. He could have been convicted, however, as an accessory before the fact, notwithstanding he was ab-

sent at the commission of the crime by tne named principals in its commission, if the indictment had so charged him therewith.

An aider and abettor is one who was present, actually or constructively, and aided and abetted the one who actually committed the crime. A late case so holding, and in which many prior ones are collected, is that of Cooksey v. Commonwealth, 235 Ky. 454, 31 S. W. (2d) 703. We have also, with equal consistency, defined an accessory before the fact as one "who, being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime. Herein absence is necessary to make him an accessory." The quoted definition is from 4 Blackstone, p. 35, and was approvingly adopted by us in the case of Able v. Commonwealth, 5 Bush, 698. We have continuously followed it without qualification since that time, as will be seen from our cases supra, and others cited in those opinions.

In looking at the instant indictment, the appellant could reach no other conclusion than that the commonwealth intended to prove that he was present when Scott and Pemberton committed the robbery of Chamberlain, and he was thereby called upon to prepare his defense to meet that charge only. However, as we have seen, if the indictment had alternately charged him with a different participation in the commission of the crime, he would then have been called upon to meet such additional alternative charge also. But none such was made, although there was proof tending to connect him, in an uncharged manner, with participation in the robbery of Chamberlain, and which uncharged manner was that he was an accessory before the fact and was absent at the time the crime was committed by the actual perpetrators thereof. In reading the indictment, he could in no manner become informed that the commonwealth would attempt to convict him by proving any such uncharged conspiracy participation. All that he was called upon to meet or refute by the charges that were preferred against him in the indictment under which he was tried and convicted was the fact that he was present at the time the crime was committed and aided and assisted those who did commit it in doing so. To that charge a successfully established alibi (i. e., that he was away from the scene) would have been sufficient to acquit him. But not so if the commonwealth

intended to convict him as an accessory before the fact, since in that case he would necessarily be absent from the scene, and his absence would constitute no alibi to the only actual participation attempted to be proved at the trial. There are many cases approving the conclusions herein expressed other than those cited above, the most of which will be found referred to in those opinions; but there is no departure therefrom to be found in any of them, and we deem it unnecessary to consume further time or space in collating all of the cases dealing with the questions discussed.

3. The conclusion reached with reference to ground 2 removes ground 3 as a factor in the case, and renders it unnecessary for us to determine the question therein raised, except to say that there should have been no instruction authorizing a conviction of appellant if the jury found that he was present and aided and abetted Scott and Pemberton in perpetrating the robbery of Chamberlain; and which is true because of the fact that there was no testimony upon which to base it. If the indictment had in one of its counts accused appellant of being an accessory before the fact and there was proof to sustain it, then an instruction authorizing his conviction as such accessory would have been proper. Of course, if the commonwealth desires further prosecution of the appellant, it may do so by taking the proper steps to resubmit the case to the grand jury and to reform the indictment against him in conformity with the proper practice as herein announced.

For the reasons stated, the judgment is reversed, with directions to set it aside and to sustain the motion for a new trial, and for other proceedings not inconsistent with this opinion.