STATE *v.* WHEATLEY

[No. 57, October Term, 1948.]

46

*Decided January 13, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*Harrison L. Winter, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Edward Turner, State's Attorney for Queen Anne's County,* on the brief, for the appellant.

*Hilary W. Gans,* with whom was *Thomas J. Keating, Jr.,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These three appeals were taken by the State of Maryland from three orders of the Circuit Court for Queen Anne's County sustaining demurrers to three indictments charging Charles Wheatley with misfeasance in the office of referee for the Employment Security Board of Maryland.

Each indictment contained four counts, but the State abandoned its appeal as to the third and fourth counts

of each indictment. The first count in the first indict-ment alleges that defendant was employed by the Em-ployment Security Board as a claims referee charged with the duties of administering the Unemployment Compen-sation Law in Queen Anne's County, and charged with the duty to find if an unemployed individual claimant is eligible to receive benefits with respect to any week by ascertaining if said unemployed individual claimant is able to work, is available for work and is actively seek-ing work; and that defendant, in disregard of his duty, did unlawfully, wilfully, knowingly, negligently and reck-lessly fail, refuse and neglect to find if Edward Kilson, an unempoyed individual claimant, "was able to work, was available for work and was actively seeking work to entitle him to be eligible to receive benefits."

The second count alleges that defendant in wilful dis-regard and violation of his duty caused compensation payments to be made to Edward Kilson in the sum of $320 without finding if he "was able to work, was avail-able for work and was actively seeking work to entitle him to be eligible to receive benefits."

The other two indictments are similar in form. One charges defendant with having wilfully and unlawfully caused compensation payments to be made to Ollie Con-yer in the sum of $300; the other charges him with having wilfully and unlawfully caused compensation pay-ments to be made to Woodrow Collier in the sum of $240. The question presented by this appeal is whether the first and second counts of each of the three indictments charge defendant with the common-law crime of misfeasance.

It is a general rule of the common law that wilful neglect or failure of a public officer to perform any min-isterial duty which by law he is required to perform is an indictable offense. *Commonwealth v. Coyle*, 160 Pa. 36, 28 A. 576, 634, 24 L. R. A. 552, 40 Am. St. Rep. 708; *Donnelley v. United States*, 276 U. S. 505, 48 S. Ct. 400, 72 L. Ed. 676; *2 Wharton, Criminal Law*, 12th Ed., sec. 1894. It is accepted that an individual serving in a judicial capacity, in which he is required to exercise his

own judgment, is not indictable for mere error of judgment or for a mistake of the law; his act, to be cognizable criminally, must be wilful and corrupt. *1 Bishop, Criminal Law,* 7th Ed., sec. 460. But it is a criminal offense for a public officer to wilfully neglect to perform a ministerial duty which he is bound to perform either by common law or by statute, unless the discharge of such duty is attended with greater danger than a man of ordinary firmness and activity may be expected to encounter. *State v. Kern,* 51 N. J. L. 259, 17 A. 114; *Clark and Marshall, Law of Crimes,* 4th Ed., sec. 436(f). Thus, in *Larmore v. State,* 180 Md. 347, 24 A. 2d 284, this Court held that an indictment charging that county commissioners negligently and unlawfully approved and passed for payment a fictitious and fraudulent claim, without first having inquired whether such claim was due, charged a dereliction of duty and misfeasance in office at common law and was not demurrable. Likewise, in *Bennett v. State,* 180 Md. 406, 24 A. 2d 786, we held that an indictment was not demurrable which charged a county treasurer with negligently countersigning checks for payment of claims without first having determined that the county commissioners had approved payment of the claims.

The Maryland Unemployment Compensation Law, intended to supplement the Federal Social Security Act, 42 U. S. C. A. §§ 301-1307, was enacted by the Legislature in 1936 in view of the widespread unemployment caused by the depression. Laws of 1936, Dec. Sp. Sess., ch. 1, Code Supp. 1947, art. 95A, secs. 1-22; *Maryland Unemployment Compensation Board v. Albrecht,* 183 Md. 87, 36 A. 2d 666. The statute provides that an unemployed individual shall be eligible to receive benefits with respect to any week only if the Board finds that he is able to work, is available for work and is actively seeking work. Sec. 4(c). The duties of examiners and referees are expressly prescribed by the statute. The statute directs that, when a claimant makes application to an examiner, the examiner shall promptly make a determ-

ination upon the claim. His determination "shall include a statement as to whether and in what amount claimant is entitled to benefits for the week with respect to which the determination is made and, in the event of denial, shall state the reasons therefor." Sec. 6 (c). If the claimant is dissatisfied with the examiner's determination, he may file an appeal therefrom with the Board. Unless the appeal is withdrawn or is removed to the Board, a referee designated by the Board, after affording the parties reasonable opportunity for a fair hearing, "shall make findings and conclusions and on the basis thereof affirm, modify, or reverse such determination". Sec. 6 (e).

The statute further provides that the decision of the referee shall be final unless further review is initiated by the Board within the time prescribed. Sec. 6 (e). Thus, the Board may on its own motion initiate a review of the decision of a referee or determination of a special examiner, or may allow an appeal from such decision. Sec. 6 (f). Finally, within ten days after the decision of the Board has become final, any party aggrieved thereby may secure judicial review thereof. Sec. 6 (h).

Each indictment in this case charges that defendant wilfully neglected his duty in the office of referee. It is alleged that defendant accepted the claimant's statement as to eligibility to benefits without making any investigation whatever of the statement. Under the statute a referee is charged with the duty to determine a claimant's eligibility for benefits only after an examiner has made a determination upon the claim, and an appeal has been duly filed from such determination with the Unemployment Compensation Board, and then only in the event that the claim has not been removed to the Board for its own determination. Hence, until an appeal has been taken from an examiner's determination, the examiner alone has the duty to determine whether a claimant is able to work, is available for work and is actively seeking work. It can thus be seen that the indictments in this case fail to describe how defendant as a referee had the

authority to make any determination upon the claims alleged.

It was argued by the Attorney General that, since the statute imposes upon an examiner the duty to make the initial determination upon every claim, the allegations in each indictment indicate that defendant must have been an examiner, notwithstanding that each count alleges that he was a referee. By the early common law it was essential to the validity of an indictment that it should conform strictly to established formality and charge the offense with technical accuracy of language. These rules developed when punishment for crime was exceedingly severe and it was desirable that technicalities be invoked to prevent the cruelty of strict enforcement of the law. Gradually, however, the courts came to recognize that much of the prolixity which characterized indictments could be safely disregarded without any infringement of the right of the accused to be informed as to the nature of the accusation against him. It has been the modern policy of the courts to disregard the extremely technical rules of the early common law, and to require only that an indictment shall allege fully the essential elements of the offense charged. We hold, however, that an indictment is demurrable which charges that the defendant, while holding a certain office, wilfully neglected the duties of an entirely different office. Where there is a manifest and substantial repugnancy in a material charge of a count of an indictment, the count cannot be sustained. *United States v. Britton,* 107 U. S. 655, 2 S. Ct. 512, 27 L. Ed. 520. Art. 21 of the Maryland Declaration of Rights declares that in all criminal prosecutions, every man has a right to be informed of the accusation against him. We have stated that every indictment, whether at common law or under statute, must characterize the crime and also describe the particular offense with such reasonable certainty as to enable the accused to prepare his defense and, if necessary, to plead the judgment as a bar to any subsequent prosecution for the same offense. *State v. Lassotovitch,* 162

Md. 147, 156, 159 A. 362, 81 A. L. R. 69; *United States v. Hess*, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed. 516.

The Attorney General relied on the Act of 1852, which was designed by the Legislature of Maryland to implement the modern policy of the courts to relax the technical rules of the early common law. This statute provides that no indictment shall be quashed, nor shall any judgment upon any indictment be stayed or reversed, for "the omission or misstatement of the title, occupation or degree of the defendant or other person or persons named in the said indictment, * * * or by reason of any mere defect or imperfection in matters of form which shall not tend to the prejudice of the defendant, nor for any matter or cause which might have been a subject of demurrer to the indictment." Laws of 1852, ch. 63, Code 1939, art. 27, sec. 649. The purpose of this statute is to provide that no objections to an indictment which could have been raised by demurrer can be raised in any other manner. Thus the defendant in a criminal prosecution in this State cannot attack the indictment by a motion to quash or motion in arrest of judgment for any defects which could have been attacked by demurrer. If he fails to demur to the indictment at the proper time, he is held to have waived all such defects. *Maguire v. State*, 47 Md. 485, 494; *State v. Edlavitch*, 77 Md. 144, 26 A. 406; *Reynolds v. State*, 141 Md. 637, 639, 119 A. 475.

After the demurrers were filed in the case at bar, the State's Attorney sought to amend all of the indictments so as to describe defendant as an examiner, instead of a referee, but the Court declined to make such amendments. It is well established that the court may amend an indictment before trial in matters of form, but in matters of substance an indictment cannot be amended without the sanction of the grand jury by whom it was presented, except in those cases where the Legislature has specially authorized an amendment. *Hawthorn v. State*, 56 Md. 530, 535. Here the State failed to show any right to amend by statutory authority.

*Orders affirmed.*