# ALFRED PARKER HUFF *v.* STATE OF MARYLAND

[No. 91, September Term, 1974.]

*Decided October 21, 1974.*

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*Elsbeth L. Bothe* and *George E. Burns, Jr., Assistant Public Defenders,* for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Harry A. E. Taylor, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *E. Nicholson Gault, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellant, Alfred Parker Huff, was convicted by a jury in the Criminal Court of Baltimore of robbery with a deadly weapon and sentenced to ten years imprisonment.[1] On appeal he presents the issues:

"1) Did the trial court coerce the jury into finding a verdict of guilty of armed robbery?

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, January 29, 1975.

1. At the close of testimony his motion for acquittal as to charges of attempted robbery, robbery, assault with intent to rob, assault and larceny was granted. Counts charging armed robbery, conspiracy to commit armed robbery, receiving stolen goods and use of a handgun in the commission of a felony were submitted to the jury.

2) Did the trial court commit reversible error by questioning a defense witness so as to elicit inadmissible evidence prejudicial to the appellant?

3) Did the trial court err in denying appellant's motion for a judgment of acquittal at the close of the State's case?"

We will consider the last issue first.

I

At the conclusion of the testimony the court instructed the jury *inter alia* on the law of principals and advised it that since no claim had been made by the State that appellant was the actual robber, he could be found guilty of armed robbery only if he was a principal in the second degree. Evidence was adduced at trial from which the jury could have found the following facts: [2]

At approximately noon on December 13, 1972, Noel Corkran held up the Monument Street branch of the Provident Savings Bank in Baltimore and escaped (momentarily) with $2,568.00.[3] Corkran had known appellant during a period of about three weeks in Washington, D. C., where appellant lived; there the two men "drank together several times and also visited some girls together several times." They were again together in Baltimore on the evening before the robbery. On one occasion during the week prior to December 13 appellant was seen in Read's Drugstore on Monument Street, directly across from the Provident Savings Bank. Corkran and appellant were again together in the drugstore shortly before the robbery. At about the time Corkran entered the bank appellant hailed a cab and was double parked in front

---

2. Appellant concedes in his brief that despite his formulation of the third issue it must be treated, if at all, as an attack upon the sufficiency of the entire evidence rather than the evidence presented during the State's case in chief, inasmuch as appellant, by himself presenting evidence, withdrew his motion for judgment of acquittal previously made. *See* Md. Rule 755 (b); Martin v. State, 10 Md. App. 274 (1970).

3. Corkran pleaded guilty to the offense.

of the bank when Corkran emerged and entered the back seat with appellant. As the cab moved off down the street Corkran was observed to hand "something" to appellant. Remarkably, the two men were heard by the taxi driver to say nothing to one another during the brief ride before the cab was stopped by police and they were arrested. An immediate search of appellant's person recovered $1,043.

At trial appellant's defense was that his involvement in the crime did not extend beyond mere unwitting presence at the scene; that, to his surprise, he was handed a wad of bills by Corkran in the cab which he pocketed only after emphatically stating he did not want them; that he had not met Corkran until the night before the robbery at a bar, had merely accompanied him across town the following morning and was only obeying Corkran's instruction to hail a cab and wait outside the bank while Corkran accomplished "some business."

Appellant advances the somewhat imaginative, but ultimately specious argument, that while evidence of his prior actions including his acquaintance with Corkran "might conceivably be offered as proof of an accessory before the fact (had appellant been charged as such and the jury accordingly instructed) it is difficult to see how it assists in showing what Huff did during the time of the robbery." Even more directly he contends that his conduct after the robbery, including his acceptance of a portion of the money, was evidence of a separate offense (receiving) "and cannot properly be used to bolster the evidence of Huff's participation in the robbery." The result, he urges, is that we are left with his bare presence at or near the scene of the crime, and such presence is by all authority insufficient to make one a principal in the second degree.

It is, of course, settled that on an indictment charging one with a felony as a principal there can be no conviction on evidence showing he was merely an accessory, *Agresti v. State*, 2 Md. App. 278 (1967), but the principal differs from the accessory before the fact only in the requirement of presence, Perkins, *Criminal Law* (2d ed. 1969) p. 658, and we

fail to see why evidence of appellant's actions prior to the robbery may not properly shed light upon his intent in being present at the perpetration of the crime.

> "A person is constructively present, hence guilty as a principal, if he is acting with the person who actually commits the deed in pursuance of a common design, and is aiding his associate, either by keeping watch or otherwise, or is so situated as to be able to aid him, with a view, known to the other, to insure success in the accomplishment of the common enterprise." Clark and Marshall, *Law of Crimes* (7th ed. 1967) p. 509.

Appellant's prior association with Corkran, the fact that he was with him on the eve of the robbery and his presence in the immediate vicinity of the crime during the preceding week were evidence of his presence at the crime "in pursuance of a common design" or to aid his associate by keeping watch or otherwise. His behavior subsequent to the crime — his silent acceptance of the money in the taxi — was evidence of the same fact notwithstanding its relevance as well to the lesser offense of receiving. In *Foster v. State*, 11 Md. App. 40 (1971), reversed on other grounds, *State v. Foster*, 263 Md. 388 (1971), Chief Judge Murphy, in discussing the meaning of accomplice participation, said:

> ". . . we think the trier of fact is entitled to take into consideration *all the attendant circumstances surrounding the presence of a witness at the crime scene* in determining whether the witness is an accomplice. [citations omitted] That a witness, alleged to be an accomplice, testifies to facts exculpating himself from any connection with or involvement in the crime does not mean that the jury is obliged to believe him. His relation to the crime is a question for determination by the jury where there is evidence, or rational inferences from evidence, from which the jury could properly

conclude that the witness was an accomplice. [citations omitted.] [Emphasis added.]

In *Foster* the "attendant circumstances" included the conduct of the alleged accomplice before and after the crime.

We conclude that the evidence showed directly or supported a rational inference of facts from which the jury could find beyond a reasonable doubt that appellant participated, as a principal in the second degree, in the bank robbery. *Williams and McClelland v. State,* 5 Md. App. 450 (1968).

## II

The counts charging appellant with armed robbery, conspiracy to commit armed robbery, receiving stolen goods and use of a handgun in the commission of a felony were submitted to the jury in the form of a sheet listing "possible verdicts" which indicated the order in which the charges were to be considered. Specifically the jury was instructed to consider conspiracy first, then armed robbery. Whether it found appellant guilty or not guilty on the latter count, it was to consider use of a handgun. On the other hand only upon a verdict of not guilty as to armed robbery was it to consider, lastly, the count of receiving stolen goods.

After deliberating some three hours the jury returned to announce that it had agreed on a verdict of guilty of receiving but was divided on the other counts. In a bench conference the court determined to inquire whether the jury felt it could still reach a verdict "at least as to conspiracy" or whether it was hopelessly divided. Questioning to this effect led the court to conclude, and both counsel concurred, that the conspiracy and armed robbery counts were intertwined in the jury's thinking and this confusion was the primary impediment to a final verdict on the two counts. The court thereupon instructed the jury, over defense objection, on the separate and distinct nature of the offenses, following this with a version of the *Allen* charge.

Appellant contends that by omitting to instruct the jury at this time that a finding of guilty of receiving precluded a

finding of guilty of robbery the court coerced the jury "to either return an improper, inconsistent verdict of guilty to both armed robbery and receiving stolen goods or to reverse itself and find the defendant guilty of armed robbery and not guilty of receiving stolen goods." In other words the jury was not advised "that a decision on the conspiracy charge, together with what had already been decided, would terminate the case." We disagree with appellant's analysis.

First, there can be no question of the propriety of the court's initial inquiry whether the jury's division on conspiracy was insurmountable. When it then became apparent that the indecision on both the conspiracy and robbery counts reflected the jury's confusion as to the law separating the offenses, the court was clearly within its right in returning the jury to deliberation with the instruction to consider these offenses separately. The question is, then, whether it should have simultaneously reminded the jury what "had already been decided" and that a verdict of guilty as to receiving precluded a like verdict as to robbery. We think clearly not.

The verdict on the receiving count was not, to begin with, a perfected verdict since the procedure of harkening had not yet taken place.[4] In *Givens v. State,* 76 Md. 485 (1893) the Court of Appeals referred with approval to *Commonwealth v. Gibson,* 2 Va. Cas. 70, where

> "it was held, that after the verdict is rendered by the jury and read in open court, it is the duty of the clerk to direct the jury to 'hearken to their verdict as the court hath recorded it, and if none of the jury express their dissent the verdict stands as recorded'; that until the assent of the jury is expressed in this way, or by a poll, the jury has a right to retract; and *that the verdict is not*

---

4. Appellant's reliance on Pugh v. State, 271 Md. 701, 319 A. 2d 542 (1974) is thus misplaced since in Pugh the *trial judge* rendered an intentional verdict of not guilty which was *eo instante* perfected. The verdict of a jury in a criminal case, on the other hand, has no effect in law until it is recorded and finally accepted by the court, Heinze, *supra* at 616.

> *perfected until after the jury has expressed their
> assent in one of these ways.*" [Emphasis added.]
> *See also Heinze v. State*, 184 Md. 613 (1945).

Moreover it is apparent, we think, that the combination of the jury's stated failure to reach a verdict on robbery [5] combined with a guilty verdict on receiving, left unremedied, would have meant an inconsistent verdict since, as the jury had been correctly instructed, it could find appellant guilty of receiving only if it found him not guilty of robbery. *See Heinze v. State, supra* at 617. On the other hand to send the jury back with the instruction, in effect, that reconsideration of its verdict on the receiving count was foreclosed would, for the same reason, tend to compel a finding of not guilty as to armed robbery. We think the court's reinstruction, rather than coercing the jury to reach an inconsistent verdict or to reverse itself, permitted it to achieve a free and final verdict as to *all* the counts submitted.[6] *See Glickman v. State*, 190 Md. 516 (1958).

Appellant also perceives error in the court's response when the jury returned to the courtroom a second time with a request to the court to "please clarify the definition of armed robbery. Can a man be guilty of armed robbery if he is in the car but without a gun?" The court instructed the jury again on the law of principals, in part as follows:

> "The law has what we call principals in the first degree and principals in the second degree. They are both equally guilty. A principal in the first degree is the person who actually uses a gun to hold up a teller and take money from that teller. That person is the principal in the first degree. However, if there is another person who is either present on the scene, or even if not present on the scene, is so close in proximity to the bank so that that person is assisting the man in the bank with

---

**5.** Not to be confused with *jury silence* as to a charge, which is equivalent to a verdict of not guilty. *See* Stewart v. State, 4 Md. App. 565 (1968).

**6.** Appellant was acquitted on the conspiracy and handgun counts.

the gun to perform the holdup by means of preventing surprise, helping him get away, or acting in a common, concerted way to achieve a concerted objective, then he would be what we call a principal in the second degree and he is just as guilty as the man who uses the gun inside the bank.

"The matter of whether or not this defendant is a principal in the second degree *is a matter for the jury to determine.* The State contends that he is a principal in the second degree, that he did participate in the armed robbery even though he didn't use the gun. The defense says that he not only didn't participate, but that he wasn't there for any purpose in cooperation with the man inside the bank. I say to the jury, and I instruct the jury, that *if* they find from the evidence and beyond a reasonable doubt that this defendant was in that taxicab for the purpose of assisting Mr. Cocoran inside that bank to commit this armed robbery, *if* he was there to prevent surprise or to assist in the getaway of both of them, *if* you find beyond a reasonable doubt he was present there in order to achieve common goal for both of them, namely the robbery of that bank, then you should find the defendant guilty of robbery with a deadly weapon. But, mere presence at the scene of a crime without anything more is not enough by itself to make him a participant. So, in conclusion, you may determine from all of the facts whether or not you find beyond a reasonable doubt that he was present constructively in order to assist in that armed robbery. *If* you do, you should find him guilty of robbery with a deadly weapon. *If* you have a reasonable doubt in your mind as to any of these elements I have just spelled out, you should find him not guilty." [Emphasis added.]

Appellant argues that this instruction incorporated "the facts of this case with the added assumption that the man in

the cab was in fact assisting the man in the bank" and was thus tantamount to a directed verdict of guilty based on appellant's participation as a principal. We note, first, that no objection was raised below to the particular form of this instruction and absent a showing of plain error the matter is not properly before us. Maryland Rule 756 g. Second, we discern no material difference between this instruction and the one given earlier by the court on the same subject, as to which appellant also registered no objection.[7] Third, we are satisfied that the court's references to the facts of the case were sufficiently hedged about with the hypothetical "if" and bracketed by the reminder that appellant's status as a principal *vel non* was "a matter for the jury to determine," so as to foreclose the real possibility of prejudice. We find no abuse of the court's discretion in the wording and detail of its instruction. *Mills v. State,* 12 Md. App. 449 (1971).

Appellant cites as an additional instance of the court's coercion of the jury its refusal twice to permit the jury to be fed prior to sending it back for further deliberation. Some seven hours elapsed between the time the jury returned from lunch and the second and final time it was sent back to the jury room. At no time did the jury indicate to the court that it was hungry or that it was otherwise adversely affected by the length and circumstances of the deliberation. We find no support in the record for the view that the jury "was effectively instructed that it would receive no succor until it had reached a 'proper' verdict." The determination of when to interrupt jury deliberation for food or rest is within the sound discretion of the trial judge and that discretion was not abused here. *See Stewart v. State, supra* at 570.

### III

Appellant objects to certain questioning by the court of Noel Corkran, called as a defense witness, following his interrogation by the parties. The challenged questioning was as follows:

---

7. Counsel for appellant initially objected to the wording of the court's instruction regarding "mere presence." When the court issued a clarifying instruction counsel indicated that she was satisfied.

"Q And you did so approach him [appellant] and did he in fact lead you to someone who would sell you drugs?

A No. He told me to ask somebody else in the bar.

Q Did you?

A Yes.

Q Did you obtain drugs?

A Yes sir.

Q Heroin?

A Not in the bar, no. I had to leave the bar. Why I did.

Q Heroin?

A Yes.

Q And then you fired?

A Yes.

Q Tell the jury what firing means.

A Means injecting drugs.

Q Into your vein?

A You put it in a cap or spoon or something, cook it, draw it up and inject into veins.

Q And then you returned from wherever that was back to the bar?

A Yes.

Q When you went and fired, was the Defendant with you?

A No.

Q Where did you fire?

MRS. BOTHE: I object to this line of questioning.

THE COURT: I'm going to overrule your objection.

BY THE COURT:

Q Where did you fire?

A In a shooting gallery.

  Q  How far away? I don't need to know the address. How far away from the bar you returned to?"

Appellant argues that it was wrong *per se* for the trial judge to ask questions "which tend to impeach the testimony of a witness," and that the resulting admission of testimony tending to show appellant's involvement in other criminal activity was also error.

We note, however, with respect to the latter contention, that appellant's involvement in criminal activity, *i.e.*, a drug transaction along with Corkran, had already been inquired into on cross-examination without defense objection. There the State asked:

> "Q  Didn't you and Mr. Huff go together on December 12th somewhere and buy drugs together?
>
> A  Uh huh.
>
> Q  What time of day was that? When was that?
>
> A  In the evening.
>
> Q  After you left the bar?
>
> A  Before we went to the bar.
>
> Q  I thought you testified you met Mr. Huff at the bar?
>
> A  I did. I mean before I did any drinking in the bar I went in and he went in there. I told him I was going to get something, so I went and got drugs, fired, come back and started drinking again.
>
> Q  So, your testimony is you went up to a man you never met and asked him about buying drugs and left and bought drugs with him?
>
> A  The thing is, this might be hard for you to understand, and isn't too many white people that go in the ghetto and the few that do go there and live in the ghetto and associate continually with black people have a lot better understanding of them than the people that

don't. So, like you can usually recognize a person and same as anybody else you can recognize a person that have knowledge of such things and people that don't."

Appellant's objection, therefore, would appear to be that the detail of the court's questioning was unnecessary and inflammatory. We are inclined to agree that the court should have omitted inquiry into the type of drug and the mechanics of "firing." We note, on the other hand, that it was the witness who had first used the word "fired," and the jury was entitled to at least a shorthand explanation of the term. Moreover we credit the court's explanation for the line of inquiry when he explained, "I'm not interested in his [the witness's] drug situation. I'm interested in his testimony he fired alone or 'we fired.'" Corkran's previous testimony on this point was not entirely unambiguous and in view of the insistence by both men that appellant was an innocent bystander of the robbery, some inquiry by the court into the intimacy of their association on the evening beforehand was legitimate. While the court's questioning may have had the additional effect of somewhat impeaching Corkran's testimony (whose involvement with drugs, however, was also in evidence) we think it remained within the bounds of an effort to obtain a proper understanding and clarification of his testimony and to assure that the full facts were brought out. *See Jefferies v. State,* 5 Md. App. 630 (1969); *King v. State,* 14 Md. App. 385 (1972). A judge's right to ask questions is not confined to questions which have no possible bearing on credibility. *Madison v. State,* 200 Md. 1, 12 (1952).

*Judgment affirmed.*