## STATE OF MARYLAND *v.* JOYCE MARCINE WILLIAMSON

[No. 76, September Term, 1977.]

*Decided February 21, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*Alfred L. Scanlan, Jr., Assigned Public Defender,* with

whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., concur in the result and LEVINE, J., filed a concurring opinion in which ELDRIDGE, J., joins at page 111 *infra.*

Joyce Marcine Williamson, appellee here, was convicted by a Baltimore County jury of murder in the first degree, conspiracy to murder, and solicitation of murder. The Court of Special Appeals in *Williamson v. State,* 36 Md. App. 405, 374 A. 2d 909 (1977), reversed as to the murder conviction. We granted the State's petition for the writ of certiorari in which two questions were posed:

> "1. Whether a person who employs a 'hired killer' for the purpose of murdering another may be found guilty of first degree murder irrespective of the presence or absence of the employer at the scene of the murder?
>
> "2. Whether the evidence was legally sufficient to find that the Respondent was a principal in the second degree and hence guilty of first degree murder?"

We think a more precise statement of the question actually before us is whether a person indicted for murder in the form prescribed by Maryland Code (1957, 1971 Repl. Vol., 1975 Cum. Supp.) Art. 27, § 616 (a) may be convicted of murder in the first degree if the accused was only an accessory before the fact. Since we answer this question in the affirmative, it follows that we must reverse the holding of the Court of Special Appeals. It thus will not be necessary for us to determine how the acts here fit within the distinction between principals and accessories and whether the common law distinction continues to have vitality in Maryland.

The Court of Special Appeals said in its opinion:

> "Maryland recognizes the common law distinction between principals and accessories before the fact.

One charged as a principal cannot be convicted on evidence sufficient to show that he was an accessory but insufficient to show that he was a principal. Persons who themselves commit the crime, either by their own hand or by the hand of an innocent agent, are principals in the first degree. Persons who are present, either actually or constructively, and who aid and abet the commission of the crime but do not themselves commit it, are principals in the second degree, provided there is a guilty principal in the first degree. Persons who procure, counsel or command the perpetrator, but who are not present, actively or constructively, at such perpetration, are accessories before the fact. Thus, the critical difference between a principal and an accessory before the fact is presence or absence during the commission of the crime.

"Here, in order to sustain the appellant's conviction, the State was required to prove that the appellant herself committed the murder or was either actually or constructively present when the crime was committed." *Id.* at 406-07. (Footnotes omitted.)

The victim was killed on October 5, 1975. The Court of Special Appeals stated that "[b]eginning in January, 1975, [Mrs. Williamson], with the help of her brother, attempted to hire someone to kill her husband. During negotiations with someone who ultimately refused to commit the murder, [Mrs. Williamson's] brother, in describing a suggested mode of operation, said: 'He would get the person drunk . . . and the guy would be in the car and it would be no problem.' " That court then went on to relate that "[i]n July or August, 1975, [Mrs. Williamson], again with the help of her brother, hired Lawrence Merrick to kill her husband." It pointed out:

"There was no evidence to show that on the night of the murder [Mrs. Williamson] helped the murderer in any way. There was nothing to show that she encouraged her husband to drink so that he

would fall asleep in the car. Neither was there evidence to show that she signalled the murderer to come and commit the murder, nor that the murderer ever contacted her in the house. Finally, there was nothing to show that she was awake at the time of the murder or that, if awake, she could see the murder site.

"In the absence of such evidence, the fact that [Mrs. Williamson] had contact with Merrick before the crime was committed, even when coupled with the fact that she was physically close to the murder site, does not show or support a rational inference that at the time the murder was committed [she] helped or was so situated as to be able to help the murderer. Consequently, the evidence was insufficient to show [her] constructive presence at the time of the commission of the crime. Accordingly, it was insufficient to show that she was a principal in her husband's murder and to sustain her conviction for that murder. We shall reverse." *Id.* at 409. (Footnote omitted.)

The common law distinction between principals and accessories is explained in 4 W. Blackstone, *Commentaries:*

"A man may be *principal* in an offence in two degrees. A principal in the first degree is he that is the actor or absolute perpetrator of the crime; and in the second degree he is who is present, aiding and abetting the fact to be done. Which *presence* need not always be an actual immediate standing by, within sight or hearing of the fact; but there may be also a constructive presence, as when one commits a robbery or murder and another keeps watch or guard at some convenient distance." *Id.* at *34. (Emphasis in original.) (Footnotes omitted.)

"As to the second point, who may be an accessary *before* the fact; Sir Matthew Hale defines him to be one who, being absent at the time of the crime committed, doth yet procure, counsel, or command

another to commit a crime. Herein absence is necessary to make him an accessary; for if such procurer, or the like, be present, he is guilty of the crime as principal. If A. then advises B. to kill another, and B. does it in the absence of A., now B. is principal and A. is accessary in the murder. And this holds even though the party killed be not *in rerum natura* at the time of the advice given. As if A., the reputed father, advises B., the mother of a bastard child unborn, to strangle it when born, and she does so; A. is accessary to this murder. And it is also settled that whoever procureth a felony to be committed, though it be by the intervention of a third person, is an accessary before the fact." *Id.* at *36-37. (Emphasis in original.) (Footnotes omitted.)

A similar description of an accessory before the fact is given in 1 Chitty, *Criminal Law:*

"1st. An accessary *before* the fact, is he that being *absent* at the time of the actual perpetration of the felony, procures, counsels, commands, incites, or abets another to commit it. If a person be *present,* and aiding and abetting, he cannot be indicted as an accessary. Words that seem to imply mere permission, as if one person informs another that he is about to commit a felony, and the latter replies 'you may do your pleasure for me,' this does not implicate him as an accessary, but it only fixes him with the guilt of a misprision. If one hire another to lay poison in order to kill a third, and he take it and die, the party hired is guilty, though absent, as principal, and the contriver is accessary; but, if the latter were present at the laying and disposing of the poison, both would be principals. And whoever procures a felony to be committed, though through the intervention of a third person, without any personal communication with the principal, is an accessary before the fact." *Id.* at *262. (Emphasis in original.) (Footnotes omitted.)

Chitty was cited by this Court in *Davis v. State,* 38 Md. 15, 45 (1873). R. Perkins, *Criminal Law* (2d ed. 1969) states:

"A principal in the second degree is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive." *Id.* at 658.

\* \* \*

"An accessory before the fact is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration." *Id.* at 663.

Presence (or absence) at the scene of the crime thus appears to be the key factor which at common law distinguished an accessory before the fact from a principal in the second degree. This presence could be constructive, as noted by Blackstone. Perkins states at 660, "A person is regarded as constructively present, within the rules relating to parties in criminal cases, whenever he is cooperating with the perpetrator and 'is so situated as to be able to aid him, with a view known to the other, to insure success in the accomplishment of the common purpose,' " quoting *Skidmore v. State,* 80 Neb. 698, 700, 115 N. W. 288, 289 (1908). It may well be in this instance that, as is argued by the State, Mrs. Williamson was in fact constructively present at the scene of her husband's murder, being physically close enough to the scene that she could have rendered assistance to the killer. Apparently, however, there was no evidence that she did in fact act as a lookout. Since in this case there was sufficient evidence to establish that Mrs. Williamson was an accessory before the fact, it is not necessary for us to make a determination as to whether or not she was constructively present.

At common law the classification as an accessory had significance, even though the conviction was for the crime

itself, *see State v. Ayers,* 67 Tenn. (8 Baxter) 96, 100 (1874), and the punishment was the same as for a principal. Blackstone discusses the differences in treatment:

"4. The last point of inquiry is how accessaries are to be treated, considered distinct from principals. And the general rule of the ancient law (borrowed from the Gothic constitutions) is this, that accessaries shall suffer the same punishment as their principals; if one be liable to death the other is also liable; as, by the laws of Athens, delinquents and their abettors were to receive the same punishment. Why then, it may be asked, are such elaborate distinctions made between accessaries and principals, if both are to suffer the same punishment? For these reasons: 1. To distinguish the nature and denomination of crimes, that the accused may know how to defend himself when indicted; the commission of an actual robbery being quite a different accusation from that of harboring the robber. 2. Because, though by the ancient common law the rule is as before laid down, that both shall be punished alike, yet now by the statutes relating to the benefit of clergy a distinction is made between them: accessaries *after* the fact being still allowed the benefit of clergy in all cases, except horse-stealing, and stealing of linen from bleaching-grounds: which is denied to the principals and accessaries *before* the fact in many cases; as, among others, in petit treason, murder, robbery, and wilful burning. And perhaps if a distinction were constantly to be made between the punishment of principals and accessaries, even *before* the fact, the latter to be treated with a little less severity than the former, it might prevent the perpetration of many crimes by increasing the difficulty of finding a person to execute the deed itself; as his danger would be greater than that of his accomplices by reason of the difference of his punishment. 3. Because formerly no man could be tried as accessary

till after the principal was convicted, or at least he must have been tried at the same time with him; though that law is now much altered, as will be shown more fully in its proper place. 4. Because, though a man be indicted as accessary and acquitted, he may afterwards be indicted as principal; for an acquittal of receiving or counseling a felon is no acquittal of the felony itself; but it is matter of some doubt whether, if a man be acquitted as principal, he can be afterwards indicted as accessary before the fact; since those offences are frequently very nearly allied, and therefore an acquittal of the guilt of one may be an acquittal of the other also. But it is clearly held that one acquitted as principal may be indicted as an accessary *after* the fact; since that is always an offence of a different species of guilt, principally tending to evade the public justice, and is subsequent in its commencement to the other. Upon these reasons the distinction of principal and accessary will appear to be highly necessary; though the punishment is still much the same with regard to principals, and such accessaries as offend *before* the fact is committed." 4 Blackstone at *39-41. (Emphasis in original.) (Footnotes omitted.)

Perkins theorizes at 669 that the principal/accessory distinction was developed by judges to give them a tool to avoid the death penalty in some felony cases.

*Shelton v. Commonwealth,* 261 Ky. 18, 86 S.W.2d 1054 (1935), and *Skidmore v. State,* 80 Neb. 698, each held that a person indicted as a principal could not be convicted as an accessory. The Court of Special Appeals followed that view in *McBryde and Bland v. State,* 30 Md. App. 357, 352 A. 2d 324 (1976), and *Agresti v. State,* 2 Md. App. 278, 234 A. 2d 284 (1967). It expressed that view in *Huff v. State,* 23 Md. App. 211, 214-15, 326 A. 2d 198 (1974), *cert. denied,* 273 Md. 721 (1975). All of those cases involved robberies with a deadly weapon.

There has been a general tendency away from the strict requirements for common law indictments as this Court

pointed out in *State v. Wheatley,* 192 Md. 44, 63 A. 2d 644 (1949):

> "By the early common law it was essential to the validity of an indictment that it should conform strictly to established formality and charge the offense with technical accuracy of language. These rules developed when punishment for crime was exceedingly severe and it was desirable that technicalities be invoked to prevent the cruelty of strict enforcement of the law. Gradually, however, the courts came to recognize that much of the prolixity which characterized indictments could be safely disregarded without any infringement of the right of the accused to be informed as to the nature of the accusation against him. It has been the modern policy of the courts to disregard the extremely technical rules of the early common law, and to require only that an indictment shall allege fully the essential elements of the offense charged. We hold, however, that an indictment is demurrable which charges that the defendant, while holding a certain office, wilfully neglected the duties of an entirely different office." *Id.* at 50.

A similar observation was made in *Shelton v. State,* 198 Md. 405, 409, 84 A. 2d 76 (1951).

The General Assembly of Maryland took action relaxing the formal requirements for an indictment in homicide cases when it enacted Chapter 248 of the Acts of 1906 stating:

> "In any indictment for murder or manslaughter, *or for being an accessory thereto,* it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to the following effect: 'That A. B., on the ⎯⎯ day of ⎯⎯⎯⎯ nineteen hundred and ⎯⎯⎯⎯, at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and murder) C. D." (Emphasis added.)

This change was in line with the comment of L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 22 (2d ed. 1904), "Under modern statutes, principals and accessories before the fact are all chargeable as actual perpetrators of the offense." Although there have been recent changes in Art. 27, § 616 because of controversies relative to the death penalty, the only actual change in the formula to be used in an indictment was the requirement added by § 7 of Chapter 558 of the Acts of 1963 that the indictment conclude with the words "against the peace, government and dignity of the State." The indictment of Mrs. Williamson was in the exact language of the statute as enacted in 1906 and amended in 1963. The validity of the 1906 enactment was upheld by this Court in *Neusbaum v. State,* 156 Md. 149, 161-62, 143 A. 872 (1928). The attack on the statute there was summarized by the Court:

> "The other objections considered together amount to no more than this, that the indictment fails to identify and describe the offence charged against the defendants with such precision and particularity as would apprise them of the specific crime of which they were accused, and that therefore it was in violation of article 21, Maryland Bill of Rights, which provides that 'in all criminal prosecutions, every man hath a right to be informed of the accusation against him,' and of the Fourteenth Amendment to the Federal Constitution, which prohibits any state from making or enforcing any law abridging the privileges or immunities of citizens of the United States, or from depriving any person of life, liberty, or property without due process of law." *Id.* at 154.

It said of the theory behind the statute:

> "Statutes similar in character to that now under consideration have been enacted in many of the American states as well as in England, in an effort to escape the excessive formalism of the common law, which formerly made the conviction or acquittal of one charged with crime so often turn upon some

technical quibble rather than upon the guilt or innocence of the accused, and the uniform tendency of the courts has been to uphold them wherever that could be done without infringing the right of the accused to the protection of such constitutional guarantees, as the right to be informed of the charge against him." *Id.* at 157-58.

The distinction between accessories before the fact and principals continually grows more illusory. It certainly was one of the "technical quibbles" addressed by the General Assembly when it enacted this form of indictment in 1906. Regardless of the reasons which may have existed at common law for requiring an accessory to be indicted as such with regard to murder, it is no longer necessary to make such distinctions in an indictment in this State and has not been necessary for almost three-quarters of a century. Mrs. Williamson having been indicted for the murder of her husband in a form which permitted proof either that she was a principal or an accessory, and the evidence adduced having been sufficient to convict her as an accessory before the fact, there was no error. It thus follows that it is not necessary for us to address ourselves to the question of whether the common law distinction between principals and accessories has any continued vitality in this State. It also follows that the Court of Special Appeals erred in reversing the conviction.

The Court of Special Appeals stated in n. 7:

"In view of this decision, [Mrs. Williamson's] contention with respect to her sentencing for murder need not be considered." *Id.* 36 Md. App. at 409.

It thus will be necessary for the Court of Special Appeals to address this issue on the remand.

> *Judgment reversed and case remanded to the Court of Special Appeals for further proceedings consistent with this opinion; appellee to pay the costs.*

*Levine, J., concurring*:

Today the Court properly concludes that evidence adduced at appellee's trial establishing her complicity in the murder of her husband as an accessory before the fact was not inconsistent with the terms of an indictment framed in accordance with the abbreviated form prescribed by Code (1957, 1976 Repl. Vol.) Art. 27, § 616 (a). In basing its decision on this narrow ground, the majority has found it unnecessary to reach the pivotal question certified for review in the writ of certiorari: whether Maryland should abandon the ancient common law distinction between principals and accessories before the fact. Because of the great importance of this issue to the administration of criminal justice in this State, I wish to register my disapproval of the common law classifications with the modest hope that the views expressed here might lead to their early demise.[1]

Maryland enjoys the unique status of being the only jurisdiction in the United States (and perhaps the only common law jurisdiction in the world) that has retained the common law doctrine of accessoryship in virtually the same form as it existed at the time of William Blackstone in the 18th century.[2] Unlike our sister states, there are no statutes in Maryland which purport to modify the common law rules, although several provisions in Article 27 do allude indirectly to the ancient categories with respect to particular felonies.[3] Nor have the decisions handed down by this Court and the Court of Special Appeals effected any substantial change in

---

1. Definitions of the common law categories of accomplices are set out in the majority opinion and need not be reiterated here. It should be noted that the common law did not recognize degrees of accomplicity where the offense involved was a misdemeanor or high treason — parties to such crimes being deemed principals for all purposes. Roddy v. Finnegan, 43 Md. 490, 503-504 (1876); 4 W. Blackstone, *Commentaries on the Laws of England* *35 (1765).

2. For a catalogue of state statutes modifying the common law rules of accessoryship *see* Model Penal Code § 2.04, Appendix (Tent. Draft No. 1, 1953); *and see* W. LaFave & A. Scott, *Handbook on Criminal Law* § 63, at 500 (1972). Significantly, England, the birthplace of the common law rules, pioneered their curtailment as early as 1861. The Accessories and Abettors Act, 1861, 24 & 25 Vict. c. 94.

3. *See, e.g.,* Code (1957, 1976 Repl. Vol.) Art. 27, § 6 (arson); Art. 27, § 29 (burglary); Art. 27, § 30 (breaking and entering); Art. 27, § 44 (forgery); Art. 27, § 128 (embezzlement); Art. 27, § 337 (kidnapping); Art. 27, § 340 (larceny); Art. 27, § 384 (maiming); Art. 27, § 486 (robbery); Art. 27, § 488 (armed robbery).

the common law doctrine or its procedural idiosyncracies. *See, e.g., Watson v. State,* 208 Md. 210, 217-19, 117 A. 2d 549 (1955); *Wimpling v. State,* 171 Md. 362, 369-71, 189 A. 248 (1937); *Davis v. State,* 38 Md. 15, 45-47 (1873); *McBryde and Bland v. State,* 30 Md. App. 357, 359-61, 352 A. 2d 324 (1976); *Huff v. State,* 23 Md. App. 211, 214-16, 326 A. 2d 198 (1974); *Butina v. State,* 4 Md. App. 312, 316-19, 242 A. 2d 819 (1968); *Agresti v. State,* 2 Md. App. 278, 280-83, 234 A. 2d 284 (1967).

Since accessories and principals at common law were deemed to be equally culpable and therefore subject to the same punishment, *Agresti v. State,* 2 Md. App. at 281; 1 J. Chitty, *A Practical Treatise on the Criminal Law* *267 (1819); Clark & Marshall, *A Treatise on the Law of Crimes* § 8.05, at 522 (7th ed. 1967), the classification of parties as principals and accessories had little, if any, substantive significance.

On the other hand, the common law doctrines of accessoryship did give rise to several highly technical procedural rules which, as one recent commentator has stated, "tended to shield accessories from punishment notwithstanding overwhelming evidence of their criminal assistance." W. LaFave & A. Scott, *Handbook on Criminal Law* § 63, at 498-99 (1972). These rules make their appearance in essentially three areas: 1) jurisdiction; 2) trial; and 3) pleading. As to the first, jurisdiction, the rule was that an accessory could be put on trial only in that jurisdiction in which the act of accessoryship was committed, irrespective of the situs of the felony itself. *State v. Chapin,* 17 Ark. 561, 566 (1856); R. Perkins, *Criminal Law* 671 (2d ed. 1969).

Insofar as trial procedure is concerned, an accessory before the fact at common law could not be tried before the principal. Thus, if the principal were acquitted or his identity never established, an accessory to the felony could never be brought to trial, thereby escaping punishment altogether. *Commonwealth v. Phillips,* 16 Mass. 423, 425 (1820); L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 38, at 23 (1897).

Finally, the rule as to pleading, invoked by the Court of Special Appeals to reverse appellee's conviction, has produced the result that one charged with the commission of a felony

as a principal cannot be convicted of that crime if the evidence actually produced shows only that the accused had acted as an accessory before the fact. *Agresti v. State,* 2 Md. App. at 284. Conversely, if an individual is charged in the indictment solely as an accessory before the fact, subsequent proof of his guilt as a principal will not result in a conviction. *McBryde and Bland v. State,* 30 Md. App. at 360.

Inasmuch as the preceding rules have never been altered by statute or judicial decision, it would appear that they represent the law of Maryland at the present time. There is nothing in the majority opinion to the contrary.

The reason for the development of these rules is obscure at best. Professor Perkins has speculated that they were devised by 14th and 15th century English common law courts as a means of alleviating the harshness of the death penalty in felony cases. R. Perkins, *Criminal Law* 669 (2d ed. 1969); *and see* W. LaFave & A. Scott, *Handbook on Criminal Law* § 63, at 499 (1972). If this theory of the historical provenience of the common law categories and procedures be correct, it is now beyond question that the rules have outlived their purpose, in light of the universal rejection of capital punishment for any but the most heinous felonies and the manifold constitutional restrictions placed upon application of the death penalty in recent years. *See, e.g., Gregg v. Georgia,* 428 U. S. 153, 96 S. Ct. 2909, 49 L.Ed.2d 859 (1976); *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972).

The common law principles of accomplicity and their procedural counterparts, in my opinion, have injected a most undesirable hypertechnicality into the law of accomplice responsibility, which not infrequently operates to thwart justice and reduce judicial efficiency. *See* Note, 19 Wash. & Lee L. Rev. 96 (1962). As this Court candidly stated in *Watson v. State,* 208 Md. at 218:

> " ' This distinguishing of the accessory before the fact from the principal is a pure technicality. It has no existence either in natural reason or the ordinary doctrines of the law. For in natural reason the procurer of a crime is not chargeable differently

from the doer; and a familiar rule of the common law is that what one does through another's agency is regarded as done by himself. . . . Likewise in morals, there are circumstances wherein we attach more blame to the accessory before the fact than to his principal; . . . .' " (Quoting 1 J. Bishop, *Criminal Law* § 673, at 486-87 (9th ed. 1923)).

The time has come in my opinion to discard the common law distinction between principals and accessories before the fact and to replace these categories with an all-encompassing doctrine which would treat all those who knowingly procure, command, counsel, encourage, aid or abet a felon in the commission of a crime as principals regardless of whether the aider or abettor was actually or constructively present at the scene of the crime. To adopt such a rule by judicial fiat would not, as I see it, result in any unfair prejudice towards defendants.[4] For example, an indictment accusing one with the commission of a crime provides sufficient notice of the nature of the proceeding even when the defendant may have participated solely as an accessory before the fact. Additionally, it is significant that the traditional rules pertaining to jurisdiction and trial of accessories have been abrogated by statute in the vast majority of American jurisdictions without unfairly prejudicing defendants and without running afoul of their constitutional rights.

It is argued in rebuttal that the common law accessoryship rules have become too fundamental to Anglo-American jurisprudence to be abolished and that if change is in order, it should be made by the General Assembly. *See* 1 J. Bishop, *Criminal Law* § 673, at 487 (9th ed. 1923). The common law, however, is not a static body of absolute and unyielding principles. Rather the genius of the common law lies in its capacity to respond to the ever-changing needs and conditions

4. Contrary to appellee's assertions, such a judicial abolition would not violate the constitutional prohibition against ex post facto laws, U.S. Const. art. I, § 10, cl. 1; Md. Decl. of Rights, art. 17, since eliminating the categories would not in any way alter the elements of the substantive criminal offense — the only change being procedural in nature. *See* Dobbert v. Florida, 432 U. S. 282, 293-94, 97 S. Ct. 2290, 53 L.Ed.2d 344 (1977); Splawn v. California, 431 U. S. 595, 601, 97 S. Ct. 1987, 52 L.Ed.2d 606 (1977).

of human society. *State v. Rush,* 46 N. J. 399, 217 A. 2d 441, 446, 21 A.L.R.3d 804 (1966); *see State v. Buchanan,* 5 H. & J. 317, 366 (1821) (Chase, C. J., concurring).

When all is said and done, the sole justification advanced for retaining the common law categories is the sheer antiquity of the doctrine. Consequently, in my view, the burden falls upon those who seek to perpetuate the anachronism to defend it.

> "It is revolting to have no better reason for a rule of law than that it was so laid down in the time of Henry IV. It is still more revolting if the grounds upon which it is laid down have vanished long since, and the rule simply persists from blind imitation of the past." Holmes, *The Path of the Law,* 10 Harv. L. Rev. 457, 469 (1897).

For these reasons I respectfully concur in the judgment of the Court. Judge Eldridge authorizes me to state that he joins this opinion.